[No. 14574. Department One. June 20, 1918.]

PIONEER SAND & GRAVEL COMPANY, *Respondent*, v.
SEATTLE CONSTRUCTION & DRY DOCK
COMPANY, *Appellant*.[1]

DEEDS—GRANT OF EASEMENT—AFTER-ACQUIRED TITLE — STATUTES.
A duly acknowledged contract between parties in possession of tide
lands with preference right to purchase, granting easement for a
waterway, is a deed, within Rem. Code, § 8765, providing that, where
any person shall convey by deed any lands without having title,
his after-acquired title shall inure to the benefit of the grantee, and
thereafter run with the land; and the omission of the word "heirs"
is immaterial, under Id., § 8753, dispensing with all such terms in
conveyances.

NAVIGABLE WATERS—CONTRACTS—WATERWAYS. An agreement be-
tween adjoining owners of tide lands for a waterway, "each party
to keep open, maintain and use" its half, is the grant of a cross-
easement of a positive and negative character, the word "use" being
intended to require each party to dock its vessels upon its own side,
rather than to forbid its use of the whole waterway for passage.

EASEMENTS—APPURTENANCES. Easements in gross are not favored,
the strong presumption being that they are appurtenant.

COVENANTS—RUNNING WITH LAND—EASEMENTS — ENFORCEMENT —
EQUITY. A contract granting an easement in a strip of tide lands
to be kept open as a waterway for the passage of water craft is a
covenant running with the land, or at least one that will be enforced
in equity against parties with notice.

VENDOR AND PURCHASER—CONSTRUCTIVE NOTICE—RECORD—CHAIN OF
TITLE. Constructive notice of a contract creating an easement in
tide lands for a passageway for water craft is given by recording
the contract, after the parties' title thereto had become vested by
their applications to purchase under their preference rights, they
then being in possession.

Appeal from a judgment of the superior court for
King county, Mackintosh, J., entered August 10, 1917,
in favor of the plaintiff, in an action for an injunction,
tried to the court. Affirmed.

[1]Reported in 173 Pac. 508.

*Bogle, Graves, Merritt & Bogle,* for appellant.

*W. H. White, Charles E. Patterson,* and *Tom S. Patterson,* for respondent.

TOLMAN, J.—This action is brought by the respondent, the owner of certain tide lands, to enjoin the appellant, the owner of adjoining tide lands, from improving such adjoining lands by piling and planking the same, and to require the appellant to remove certain piling, buildings, and structures already placed thereon by the appellant.

The respondent's action is based upon its contention that it is the owner of an easement on the strip of appellant's tide lands, thirty-three feet in width, adjoining the south line of respondent's lands, and extending easterly from the inner harbor line approximately two hundred and sixty feet.

Prior to March 25, 1890, an attempt was made to lay out and plat an addition to the city of Seattle known as Dearborn's second addition, which plat designated a strip of said tide lands as Charles street, which so-called street extended westerly from Commercial street, now First avenue south, to the deep water of Elliott bay, the center line thereof being approximately coincident with the north line of the strip thirty-three feet wide owned by the appellant, and upon which respondent claims an easement by virtue of the agreement hereinafter set forth.

On February 11, 1895, the plat of the Seattle tide lands, including the lands involved in this action, made by the tide land appraisers of King county, was filed in the office of the auditor of King county. And on the 15th day of March, 1895, the official plat of said tide lands was filed in the office of the board of state land commissioners at Olympia.

20—102 WASH.

The respondent's claim is based upon a written agreement entered into on March 13, 1895, and recorded in the office of the county auditor of King county, Washington, on May 29, 1895. At the time said agreement was made, neither of the parties thereto had any title to the lands involved, except that they were in possession, had made valuable improvements, and claimed to have, and had, a preference right of purchase as given by the statute. The contract referred to, upon which respondent bases its rights, is as follows:,

"This contract, made and entered into this 13th day of March, A. D. 1895, by and between the Seattle Dry Dock and Ship Building Company, a corporation organized and existing under and by virtue of the laws of the state of Washington, having its principal place of business at Seattle, the party of the first part, and the Allen & Nelson Land Company, a copartnership doing business in Seattle, King county, Washington, the party of the second part,

"Witnesseth: That whereas, There was laid out upon the tide lands in the city of Seattle a certain so-called addition to said city, designated as Dearborn's Second addition, upon which there was laid out and platted a certain street called Charles street, which was produced westward to the deep water of Elliott Bay, which said Charles street has not been platted or recognized as a street upon the map recently filed of said tide lands by the tide land appraisers of King county, Washington, and

"Whereas, A portion of the lands included within said Charles street, as platted upon said Dearborn's Second addition, has been improved and used as a private way by the parties hereto, said portion so improved being bounded and described as follows, to wit: Commencing at a point 50 feet west of a point 1,495 feet south of the intersection of the center lines of Commercial and Jackson streets in said city of Seattle, running thence west 668.918 feet, thence south 66 feet, thence east 668.918 feet, thence north 66 feet to the

place of beginning; and by the improvement of said last described tract and of the tide lands to the north and south of the same said parties have the preference right to purchase from the state of Washington all of said lands above described, and

"Whereas, It is deemed for the best interests of both the parties hereto that said lands above described shall be purchased and a portion thereof occupied by the parties hereto in the proportions and upon the terms, conditions and agreements hereinafter contained:

"Now, therefore, it is hereby agreed:

"(1)  That said party of the first part shall make application for, and in case said application is allowed, will purchase from the state of Washington the following described portion of the lands hereinbefore described, to wit:  Commencing at a point 468.918 feet west of a point 1,528 feet south of the intersection of the center lines of Commercial and Jackson streets in the city of Seattle, running thence west 250 feet, thence south 33 feet, thence east 250 feet, thence north 33 feet to the place of beginning.

"(2)  Said party of the second part shall make application for, and in case said application is allowed, will purchase from the state of Washington the following described portion of the lands hereinbefore described, to wit:  Commencing at a point 50 feet west of a point 1,495 feet south of the intersection of the center lines of Commercial and Jackson streets in the city of Seattle, running thence west 668.918 feet, thence south 33 feet, thence east 430 feet, thence south 33 feet, thence east 238.918 feet, thence north 66 feet to the place of beginning.

"(3)  It is agreed by and between the parties hereto that there shall be constructed upon the following portion of the lands hereinbefore described, to wit:  Commencing at a point 50 feet west of a point 1,516 feet south of the intersection of the center lines of Commercial and Jackson streets in the city of Seattle, thence west 668.918 feet, thence south 24 feet, thence east 668.918 feet, thence north 24 feet to the place of beginning, a roadway, said roadway so constructed to be

a good, sufficient and substantial roadway, suitable for driving, draying and trucking and ordinary wagon traffic; all of said roadway to the west of the center line of Railroad avenue in the city of Seattle to be constructed as hereinbefore set forth by and at the expense of the party of the first part, and all of said roadway to the east of the center line of Railroad avenue in the city of Seattle to be constructed as hereinbefore set forth by and at the expense of the party of the second part; the parties hereto each to maintain the portion constructed by it or them as a good, sufficient and substantial roadway, suitable for driving, draying and trucking and ordinary wagon traffic, until Alaska street and Railroad avenue, on the official map of the tide land appraisers of King county, Washington shall be so opened and improved as to permit both of the parties hereto to obtain ready access to all lands they may purchase from the state of Washington contiguous to and abutting upon said roadway, or until some other street or streets to the north and eastward shall be opened, permitting said parties such access to said lands, and each of the parties hereto shall maintain and keep in repair the portion of said roadway hereinbefore agreed upon to be constructed by it or them, and both of the parties hereto shall have the right at all times until access to their lands be obtained in the manner hereinbefore set forth, to occupy and use the whole of said roadway for the purposes aforesaid, to wit: for draying, driving, trucking and ordinary wagon traffic.

"(4) It is expressly understood and agreed by and between the parties hereto that neither party shall be responsible to the other for damages resulting from any accident occurring to any third party or parties upon the respective portions of the roadway constructed and maintained by it or them.

"(5) Said party of the first part hereby assigns, transfers and sets over to said parties of the second part all its right, title, interest, and its preference right of purchase from the state of Washington of the following described lands, to wit: Commencing at a point 50 feet west of a point 1,495 feet south of the

intersection of the center lines of Commercial and Jackson streets in the city of Seattle, thence west to the inner line of the harbor rim, as shown upon the official map of the tide land appraisers of King county, Washington, thence south along said inner line of the harbor rim 17 degrees 14' west 34.55 feet, thence east to the center line of Railroad avenue, thence south on the center line of Railroad avenue 33 feet, thence east 328.918 feet, thence north 66 feet to the place of beginning; and said parties of the second part hereby assign and set over to said party of the first part all their right, title, interest and preference right to purchase the following described lands, to wit: Commencing at a point on the center line of Railroad avenue 378.918 feet west of a point 1,528 feet south of the intersection of the center lines of Commercial and Jackson streets in the city of Seattle, running thence west to the inner line of the harbor rim as shown on the official map of the tide land appraisers of King county, Washington, thence south along said harbor rim 17 degrees, 14' 15" west 34.55 feet, thence east to the center line of Railroad avenue, thence north to the place of beginning.

"(6) It is further understood and agreed that in case the state shall permit such purchase, said party of the first part will purchase from the state of Washington the following described lands, to wit: Commencing at a point 718.918 feet west of a point 1,528 feet south of the intersection of the center lines of Commercial and Jackson streets in the city of Seattle, running thence west to the inner line of the harbor rim, thence south along said harbor rim 17 degrees, 14', 15" west 34.55 feet, thence east to a point 340 feet west of the center line of Railroad avenue, thence north to the place of beginning; and in case said state shall so permit, the parties of the second part will purchase from said state the following described lands, to wit: Commencing at a point 718.918 feet west of a point 1,495 feet south of the intersection of the center lines of Commercial and Jackson streets in the city of Seattle, thence west to the inner line of the harbor rim, thence south along said harbor rim 17 degrees 14' 15" west

34.55 feet, thence east to a point 340 feet west of the center line of Railroad avenue, thence north to the place of beginning; and said lands purchased by said parties as in this paragraph provided shall all be kept open and maintained by the parties hereto as a waterway for the accommodation of vessels, boats and other water craft, each party to keep open, maintain and have the use, for the purposes aforesaid, of the portion purchased by it or them.

"In witness whereof said party of the first part has caused these presents to be signed by its president and secretary, thereunto duly authorized, and its corporate name and seal to be hereunto attached, and said parties of the second part have hereunto set their hands and seals the day and year first above written.

"Seattle Dry Dock and Ship Building Company
      "By Robert Moran, President
"Attest:  Paul Moran, Secretary.
                "Robert Abrams  (Seal)
                "Watson Allen   (Seal)
      "Allen & Nelson Land Co.   (Seal)
      "By J. B. C. Lockwood, Mgr. (Seal)
                "J. Furth, Trustee."

The foregoing contract is duly acknowledged by all parties.

Following the execution of this contract, and on April 1, 1895, the Seattle Dry Dock & Ship Building Company made application to the state board of land commissioners to purchase the lands occupied by it, in accordance with the terms of said contract, title to which lands has since passed to and vested in the appellant. And on the same day, April 1, 1895, J. B. C. Lockwood, as trustee for all of the parties interested, made application to the state board of land commissioners to purchase the lands claimed and occupied by the parties of the second part therein, in accordance with the terms of the contract, title to which lands has since passed to, and is now vested in, the respondent. The state conveyed to it by deed the lands embraced

in the application of the Seattle Dry Dock & Ship Building Company, on July 25, 1899; and likewise conveyed by deed to J. B. C. Lockwood the lands embraced in his application, on January 23, 1900. The strip of land sixty-six feet wide, except the easterly end thereof, which appears to have been filled in by mutual consent, has at all times remained an open waterway until shortly before the bringing of this action, at which time the appellant entered upon that portion thereof, the title to which had vested in it, and began to drive piles, etc., with a view to permanently withdrawing that portion of the so-called waterway from use as such. Thereupon this action was brought to enjoin interference with such waterway, resulting in a decree recognizing the waterway as claimed by the respondent and permanently enjoining the appellant from interfering therewith, and requiring the appellant to remove its piling, etc., theretofore placed in said waterway, and every part thereof, excepting only the sixty-nine feet thereof which had been filled by mutual consent. From this decree, the appeal is taken.

The question to be determined in this case is whether the contract upon which respondent bases its rights because of its form and substance, and the fact that it was executed when neither party thereto had title to the real estate in question, was merely a personal contract, binding only upon the parties who executed it, and not now enforceable against the present owners, or whether, though the title was in the state at the time of its execution, it is a covenant running with the land, and the recording thereof was constructive notice to all subsequent purchasers and binding upon the appellant, or such a contract or covenant as equity will enforce.

We must assume that, at the time the contract was entered into, neither party had any vested right in the

lands claimed by it. *Allen v. Forrest*, 8 Wash. 700, 36 Pac. 971, 24 L. R. A. 606; *Seattle & Lake Washington Waterway Co. v. Seattle Dock Co.*, 35 Wash. 503, 77 Pac. 845. And no right would have then passed from them, or either of them, by deed. *Gifford v. Horton*, 54 Wash. 595, 103 Pac. 988. Also that their vested rights in said land began only with the applications to purchase from the state. *State ex rel. Billings v. Bridges*, 22 Wash. 64, 60 Pac. 70, 79 Am. St. 914. And yet, because of being in possession and having made valuable improvements, they each had a preference right to purchase, as recognized in all of these cases, which could be taken away only by act of the legislature. They were each in undisputed possession, had made valuable improvements, and contemplated taking steps to acquire full legal title, as is shown by the contract itself, and did, in fact, in accordance with the terms of the contract, proceed to acquire title in fee from the state. Why should not such after-acquired title, in law as well as in equity, be impressed with the terms of this contract?

The statute, Rem. Code, § 8765, then and now in force, provides:

"Whenever any person or persons having sold and conveyed by deed any lands in this state, and who, at the time of such conveyance, had no title to such land, and any person or persons who may hereafter sell and convey by deed any lands in this state, and who shall not at the time of such sale and conveyance have the title to such land, shall acquire a title to such lands so sold and conveyed, such title shall inure to the benefit of the purchasers or conveyee or conveyees of such lands to whom such deed was executed and delivered, and to his or their heirs and assigns forever. And the title to such land so sold and conveyed shall pass to and vest in the conveyee or conveyees of such lands, and to his or their heirs and assigns, and shall thereafter run with such land."

That this contract is in fact a grant of valuable rights in real estate, and, so far as it grants such rights, is a deed under this statute, we have little doubt. The omission of the word heirs, or other technical terms, does not in any way impair it, because our statute, Rem. Code, § 8753, dispenses with all such terms in conveyances.

The language in the latter part of the sixth paragraph of the contract: "And said lands purchased by said parties as in this paragraph provided shall all be kept open and maintained by the parties hereto as a waterway for the accommodation of vessels, boats and other water craft, each party to keep open, maintain, and have the use, for the purposes aforesaid, of the portion purchased by it or them;" would seem, in the light of the remainder of the contract, to express an intention to keep open this waterway, sixty-six feet in width, for the accommodation and passage of vessels and water craft. It cannot be assumed that it was the intention to observe an invisible line in the center of the waterway, so that each party should confine its use thereof to the thirty-three-foot portion to which each severally afterwards acquired title. The words "shall be kept open and maintained . . . as a waterway for the accommodation of vessels," indicates an intention to use the sixty-six-foot space as a whole for the passage of vessels; and the later clause indicates an intention to cast on each party the burden of keeping open and maintaining his half, and having the use thereof for purposes not inconsistent with the principal object of maintaining an open sixty-six-foot waterway for the passage of vessels. The word "use," as there employed, it would seem, was intended to require each party to dock its vessels upon its own side of the waterway, rather than to forbid it to use the whole waterway in bringing in and taking out such vessels.

Such instrument appears to be both an agreement and a grant, and has the effect of creating cross-easements of a positive and negative character. Presumably it is both a benefit and a restriction to each party thereto.

The questions as to when covenants do or do not run with the land, and whether easements are appurtenant or in gross, were among the most abstruse and technical questions of the common law. And when one goes to the earlier cases, he meets confusion and conflict. Many of the old doctrines have since been expressly overruled; others seem to be ignored; and more and more equity has come to enforce covenants which technically do not run with the land.

It is well settled in law that easements in gross are not favored; and a very strong presumption exists in favor of construing easements as appurtenant.

Under the rule laid down in the more modern cases, we think the contract here in issue was a covenant running with the land. *Sexauer v. Wilson*, 136 Iowa 357, 113 N. W. 941, 14 L. R. A. (N. S.) 185; *McCoy v. Chicago, M. & St. P. R. Co.*, 176 Iowa 139, 155 N. W. 995; *Willets v. Langhaar*, 212 Mass. 573, 99 N. E. 466; *Weill v. Baldwin*, 64 Cal. 476, 2 Pac. 249; *Lidgerding v. Zignego*, 77 Minn. 421, 80 N. W. 360, 77 Am. St. 677; *Hatfield v. Hatfield*, 150 Ky. 788, 151 S. W. 3; 7 R. C. L. 1110, and cases there cited. At any rate, the contract appears to be such a covenant regulating or restricting the use of the land as will be enforced in equity, when the party acquiring title took with notice, whether it is technically a covenant running with the land or not. *Barrow v. Richard*, 8 Paige Ch. (N. Y.) 351, 35 Am. Dec. 713; *Equitable Life Assur. Soc. of United States v. Brennan*, 148 N. Y. 661, 43 N. E. 173; *Brewer v. Marshall*, 19 N. J. Eq. 537, 97 Am. Dec. 679; *Burbank v. Pillsbury*, 48 N. H. 475, 97 Am. Dec. 633;

*Jewell v. Lee,* 14 Allen 145, 92 Am. Dec. 744; *Willoughby v. Lawrence,* 116 Ill. 11, 4 N. E. 356, 56 Am. Rep. 758; *Kettle River R. Co. v. Eastern Ry. Co.,* 41 Minn. 461, 43 N. W. 469; *Peabody Heights Co. of Baltimore City v. Willson,* 82 Md. 186, 32 Atl. 386, 1077, 36 L. R. A. 393; *American Strawboard Co. v. Haldeman Paper Co.,* 83 Fed. 619; *Bryan v. Grosse,* 155 Cal. 132, 99 Pac. 499.

In order to be binding upon the appellant, either in law or in equity, it must have had actual or constructive notice of the contract. There seems to be ample evidence in the record to show that the property was so laid out, improved, and used as to give actual notice to the appellant that it was in fact a waterway, and to put appellant upon inquiry as to how the waterway was established, and what respondent's rights therein might be. We prefer, however, to hold that the appellant had constructive notice. The contract was duly recorded in the office of the county auditor of King county, Washington, on May 29, 1895. The rights of the parties in the real estate involved became vested when they made application to the state board of land commissioners to purchase, or on April 1, 1895; and since they were then in possession, and especially in the light of our statute with reference to the conveyance of after-acquired interests, it seems to us that the appellant was bound by everything which appeared of record, at least back to the date of the making of the applications and the acquiring of the vested right in the real property, or April 1, 1895. If such a search had been made, the record of this contract would have been found.

The appellant seems to rely upon the case of *Peterson v. Sloss,* 39 Wash. 207, 81 Pac. 744. In that case, the court, while applying the correct rule of law applicable to the facts, appears to have lost sight of our

statute with reference to the conveying of an after-acquired title, and to have indulged in some expressions which seem to indicate that a conveyance made by a party before he acquires title to the property conveyed is without the chain of title, and the record thereof might not be constructive notice to persons dealing with the property. Of course, all such expressions in that opinion are obiter only, and no one should be misled thereby. It would seem to be necessary, in view of the statute referred to, for one to limit the search of the records only at his own peril. And assuredly he should be required to take notice of all instruments filed of record, executed by or on behalf of any person having preference rights or vested interests.

For the reasons given, the judgment of the lower court will be affirmed.

MAIN, C. J., FULLERTON, PARKER, and MITCHELL, JJ., concur.