[Nos. 2665–3; 2706–3.  Division Three.  December 18, 1979.]

NORTH AMERICAN NON METALLICS, LTD., *Respondent,* v. THEODORE J. ERICKSON, ET AL, *Appellants.*

*Charles T. Conrad* and *Schimanski & Leeds,* for appellants.

*Stephen R. Blake* and *Skok & Blake,* for respondent.

ROE, J.—In this action the trial court sustained plaintiff North American Non Metallics Ltd.'s (North American) right to use a Quarry Road holding that the reservation of a contract herein discussed constituted an easement in gross. We affirm the result on other grounds.

Since 1965, the plaintiff has been producing marble aggregate at a plant near Valley, Washington. Part of the material used is obtained from a quarry located some distance from a county road. In order better to understand the position of the parties, a sketch is submitted. Sections 13, 14, 23, and 24 are indicated as well as the roads which were

the subject matter of two easements, [1] and [2], of the contract.

ILLUSTRATIVE ONLY

In 1965, a "license agreement" between Ray H. Wiley and Jack G. Wiley, a partnership, and North American granted the latter the right to proceed from the county road to the quarry along the road through Wileys' private property. That agreement further provided:

> The terms, covenants and agreements contained herein shall be binding upon and inure to the benefit of the heirs, successors and assigns of Licensor and Licensee herein.

Five hundred dollars per year was the annual fee. The "license agreement" was not recorded until after this action was commenced.

In 1973, the Wileys' successors in interest, Philip F. Farr and wife, sold to defendants Ericksons part of the land through which ran the Quarry Road used by North American. North American never paid $500 per year to the Ericksons. Consequently, Ericksons blocked the road, resulting in this action.

Originally plaintiff relied on the "license agreement" for its claim, but this basis was modified during trial because the trial court correctly held that since the 1965 "license agreement" was unrecorded, it did not give notice to the Ericksons, and plaintiff could assert no rights thereunder against them.

■ Plaintiff must prevail upon the strength of its title, not upon the weakness of the defendants' title. *Harper v. Holston,* 119 Wash. 436, 205 P. 1062 (1922). Since the "license agreement" was not recorded, plaintiff does have a right to use the Quarry Road under that agreement, except as to Ericksons. That agreement will justify plaintiff's position if Ericksons have no right to stop traffic on that road which passes through their property.

The source of the Erickson title was the Farr contract. By that contract Farrs retained property to themselves adjacent to Ericksons and included the following reservations:

■ RESERVING TO THE GRANTOR [Farrs], his heirs, administrators, successors and assigns, a permanent easement for road over and across all existing roads on the premises for the purpose of ingress and egress to adjacent tracts of the grantor *and of others.*

This easement shall be appurtenant to the following described tract of the grantor:

The N 1/2 of SW 1/4 of SW 1/4, and Government Lots 1 and 2, in Section 13, Township 38 North, Range 37, East, W.M.

. . .

SUBJECT to any and all easements, reservations, agreements, restrictions, assessments, rights of way, conditions or other servitudes appearing in the chain of title or existing in connection with said premises.

■ TOGETHER WITH a non–exclusive easement 60 feet in width, 30 feet on each side of center line of the existing private road as located on January 1, 1968, which road begins at County Road, near the southeast corner of SW 1/4 of SE 1/4 of Section 14, Township 38 North, Range 37, East, W.M., thence runs northeasterly across the SE 1/4 of SE 1/4 Section 14, and the SW 1/4 of SW 1/4 Section 13.

(Italics ours.) Easement No. [1] is a reservation pertaining to the Quarry Road running through Ericksons' property and no longer touching Farrs' present property. Easement No. [2] assured Farrs access through Ericksons' property to the area retained by Farrs. Erickson testified, and was contradicted by Farr, that Farr did intend to convey to them the exclusive rights to the Quarry Road and the right to collect the $500 annual toll.

Farr's testimony further supported the theory upon which the trial court decided the case, *i.e.,* he (Farr) not only reserved No. [2], the 60–foot nonexclusive easement for his retained property, but also reserved to himself, his successors and assigns, a permanent easement, No. [1], over *all* existing roads on the premises for the purpose of ingress and egress to tracts adjacent to Farr *and others,* and that this was appurtenant to the Farrs' retained land. Later Farrs conveyed this reserved easement and adjacent lands through which it also passed to Charles C. Nealey and wife, who then gave permission for plaintiff to use the roads and collected the $500 toll.

■ In order to determine the relative rights of the parties, it is appropriate to examine the source of Ericksons' claim, that is the Farr–Erickson contract. Its written terms are not in dispute. This court is bound by the unambiguous terms of the written instrument which may not be varied by parol evidence. *Poggi v. Tool Research & Eng'r Corp.,* 75 Wn.2d 356, 364–65, 451 P.2d 296 (1969). Thus, it is the

duty of this court to decide what rights were granted by Farrs to Ericksons and what were the effects of the reservations. If Farrs reserved a permanent easement, No. [1], to the Quarry Road which was never transferred to Ericksons, then Ericksons may not blockade the road and plaintiff must prevail.

Ericksons received a diminished estate by their contract from Farrs since other easements were reserved for other pieces of property or individuals. The Farr–to–Erickson contract intended to reserve all existing easements. There was no specific intent to grant to Ericksons the sole right to the Quarry Road.

According to Black's Law Dictionary 1472 (4th ed. rev. 1968), a reservation is:

> A clause in a deed or other instrument of conveyance by which the grantor creates, and reserves to himself, some right, interest, or profit in the estate granted, which had no previous existence as such, but is first called into being by the instrument reserving it; such as rent, or an easement.

In deeds and conveyances a reservation withdraws from operation the part of the property granted which would otherwise pass to the grantee.

The Quarry Road easement, No. [1], was made appurtenant to a certain described tract of the grantor even though the grantors Farrs reserved for their use an additional easement, No. [2], 60 feet wide to assure access to the property which they retained. The question presented is: Is this Quarry Road easement, No. [1], for the sole benefit of Farrs' retained land, and is it alienable to other purchasers of land of the grantors through which it runs (later sold by Farrs to Nealeys), but which land was not mentioned in the Farr–Erickson contract?

As stated in *Winsten v. Prichard*, 23 Wn. App. 428, 430, 597 P.2d 415 (1979):

> Express easements in land may be created by either grant or reservation. An easement "in gross" is one which benefits an individual, whether or not he owns another

tract of land. If the prime beneficiary of the easement is another tract of land, regardless of who owns such tract, then the easement is "appurtenant."

In that case, a reservation in a deed for an easement to a *noncontiguous* strip of land for ingress, egress, and utilities was held to be appurtenant rather than in gross and thus benefited the grantees of the original land to the detriment of the owners of the land over which the easement ran.

As stated in 2 G. Thompson, *Commentaries on the Modern Law of Real Property* § 321, at 58–59, 66 (J. Grimes repl. 1961):

> A way appurtenant is an easement running with the dominant tenement. Thus, the *reservation* in a deed by the grantor of space for a driveway across the lot conveyed, to another lot owned by him creates an easement appurtenant to the lot last mentioned . . .
>
> . . . Moreover, the *grant* of a private right–of–way appurtenant to the use of the land conveyed does not create an easement in favor of a stranger to the conveyance nor confer any right therein on such stranger; for example, a right to use the way is not conferred on an adjoining owner, notwithstanding a common source of title. . . .
>
> . . .
> . . . Where a grantor conveys a part of his land reserving a perpetual right–of–way over the part so conveyed, the right–of–way reserved is appurtenant to the portion of land retained.

(Italics ours. Footnotes omitted.) 2 G. Thompson, *Commentaries on the Modern Law of Real Property* § 322, at 67–68, 76 (J. Grimes repl. 1961), provides:

> An appurtenant easement is incapable of existence separate and apart from the particular land to which it is annexed. So, it cannot be conveyed by the party entitled to it separate from the land to which it is appurtenant. It can be conveyed only by a conveyance of such land. It inheres in the land and cannot exist separate from it; nor can it be converted into an easement in gross.
>
> . . .
> . . . Thus, if a way is reserved for the benefit of a parcel of the grantor's remaining land particularly described

or indicated, the way is appurtenant to that parcel only. However, an easement cannot be extended or made to attach to land other than that for the benefit of which it was created.

(Footnotes omitted.)

After the Erickson contract was executed, Farrs still owned land to which this easement was appurtenant. They later sold adjacent land to Nealeys through which the Quarry Road also ran. Ericksons never contracted for or received exclusive right to the Quarry Road. It was always retained by Farrs and related to their then property. As between Farrs and Nealeys, Farrs may be estopped to collect the toll even if the easement appurtenant is limited to Farrs' land, but that question is not before this court. An easement does not lose viability because of noncontiguity.

In *Kemery v. Mylroie,* 8 Wn. App. 344, 506 P.2d 319 (1973), a common grantor first conveyed certain northerly lots to plaintiffs, owners of land on a harbor road. These lots did not front on the beach, so the grantor gave an easement from the road to the beach over other property which he owned; the easement being the southerly 10 feet of the grantor's property which was not contiguous to the three lots originally granted plaintiff but was separated by 20 feet. In order to use the easement, the plaintiffs went from their property to the road, proceeded 20 feet south, and then went from the road across the easement to the beach, or trespassed over the 20–foot strip between the two parcels, the southerly parcel of which was later purchased by the defendant. It was contended that the noncontiguous nature of the access necessarily resulted in an easement in gross. If it were an easement in gross, then it was a mere license and when the common grantor subsequently sold to the defendants' predecessor in interest, the defendants could revoke that license or easement. The court stated on page 346 of *Kemery,* quoting from *Pioneer Sand & Gravel Co. v. Seattle Constr. & Dry Dock Co.,* 102 Wash. 608, 618, 173 P. 508 (1918):

The questions as to when covenants do or do not run with the land, and whether easements are appurtenant or in gross, were among the most abstruse and technical questions of the common law. And when one goes to the earlier cases, he meets confusion and conflict. Many of the old doctrines have since been expressly overruled; others seem to be ignored; and more and more equity has come to enforce covenants which technically do not run with the land.

It is well settled in law that easements in gross are not favored; and *a very strong presumption exists in favor of construing easements as appurtenant.*

The court further stated on page 346:

The "majority rule" appears to be that an appurtenant easement can be created notwithstanding the failure of the way to touch the dominant estate, the *intention of the parties being the primary factor.*

(Italics ours.) There is a minority rule to the contrary.

The court observed that the intentions of the parties are paramount, in the absence of some overriding public policy which would prohibit creation of the entity intended.

We know of no such public necessity which would prevent parties from creating an access easement running with the land even though the easement be geographically separated from the land for whose benefit the easement was established.

*Kemery v. Mylroie, supra* at 346.

Thus, the court held that the plaintiffs may use the easement, and if they would subsequently convey their three lots, they could convey with it an easement to a noncontiguous strip of land separated from their own by 20 feet.

Applying that rationale to this case, the original grantors, Wileys, and their successors down to Farrs, owned the land through which the Quarry Road runs and in conveying all or parts of it always retained the easement for that road. In the contract by which Ericksons purchased their land from Farrs, Farrs reserved this easement to themselves and their assigns for the purpose of ingress and egress to adjacent tracts of the grantor and of others and made that easement appurtenant to certain land which Farrs retained when

they sold to Ericksons. Thus, it would be appurtenant to or identified with and spring from their ownership of the land. It need not be contiguous. The fact that they subsequently may have granted this right to another party, Nealey, or the effect of that grant, does not avail Ericksons and it is irrelevant to this suit.

Ericksons obtained the fee in part of the Quarry Road. They have the right to use it for access to their own property. This does not give them the right to deny the use of the road to others because the easement was *reserved* by Farrs to grant ingress and egress to adjacent tracts of themselves *and of others*. Thus, defendants are in no position to challenge plaintiff's use of the Quarry Road.

Finally, we have carefully examined the request of the defendants for relief from judgment under CR 60 on the doctrine of appearance of fairness. After studying the facts, we have concluded that no reversal is justified on that ground.

Judgment is affirmed.

GREEN, C.J., and MUNSON, J., concur.

Reconsideration denied January 14, 1980.

Review denied by Supreme Court March 21, 1980.