[Department Two. — January 26, 1884.]

A. WEILL, RESPONDENT, v. E. J. BALDWIN ET AL., APPELLANTS.

COVENANTS — WHEN RUNNING WITH THE LAND — AGREEMENT TO DIVIDE THE WATER OF A STREAM. — Where the owners of adjoining tracts of land separated by a stream covenant and agree between themselves as such owners that the waters of such stream shall be taken and conducted to a reservoir on the land of one owner by ditches and flumes constructed at their joint expense, and that the other owner may construct ditches across the land and convey one half of the water from the reservoir to his own premises, such covenants run with the land, and the successor in interest of the owner of the land upon which the reservoir is situated, cannot, by going to a point higher up the stream and diverting the water, claim the whole of it for his own use.

APPEAL from a judgment of the Superior Court of the county of Los Angeles, and from an order denying a new trial.

Action to recover damages for alleged wrongful acts of defendants in tearing up and destroying a water ditch constructed by the plaintiff for irrigating purposes, and to obtain a decree declaring that the plaintiff held a right of way for two ditches

over the land of defendant Baldwin, and a right to the use of one half of the waters of a certain stream, and for an injunction. The facts sufficiently appear in the opinion of the court.

*Brunson & Wells*, for Appellants.

*Glassell, Smith & Patton*, and *Smith, Brown & Hutton*, for Respondent.

MYRICK, J. — This controversy is as to the right of the plaintiff to go upon the land of Baldwin and construct and use a ditch to convey water from a reservoir located on Baldwin's land to and upon the land of plaintiff, for use thereon.

The two ranchos, the Santa Anita and the Duarte, are separated by the Saw Pit Canon stream, the Santa Anita on the west and the Duarte on the east. At the date of the two instruments first herein referred to, plaintiff (Weill) was the owner of the Duarte, and Wolfskill, (Baldwin's predecessor), was the owner of the Santa Anita. On the 30th of October, 1869, Wolfskill and Weill executed an instrument, reciting the ownership by them respectively of the ranchos, that the stream ran between the two ranchos, coinciding generally with the boundary line, and that they had agreed to use the waters of the stream in common for the purpose of irrigating the ranchos, and for such other purposes as they may desire respectively, each to have an undivided one half interest in the use of the said waters, and the parties mutually granted each to the other an undivided one half of the right, title, and interest of each respectively to the water of the said Saw Pit Canon, to have and to hold by the said parties respectively and their heirs and assigns forever. This instrument was acknowledged and recorded.

On the 3d of January, 1870, the same parties made another instrument, reciting that, whereas Wolfskill had, at his own cost, constructed a ditch and aqueduct to conduct the water of the stream to a point on the Santa Anita, and that it was intended and agreed that the parties were and should be equally interested in the ditch and aqueduct and in the use of the water in the arroyo and ditch, therefore, in consideration thereof, and of the payment of eight hundred and twenty-five dollars, paid

by Weill to Wolfskill, being the proper proportion of the cost of the ditch, the said Wolfskill granted, bargained, and sold to Weill the undivided one half of the ditch and the use thereof from the point where it received the water to the point where it emptied, or should empty, its contents into the reservoir selected for that purpose on the Santa Anita, together with the equal use and enjoyment of the same and of the water thereof, inclusive of the equal right of way throughout the course of the ditch for all purposes of use and repair, to an equal extent with said Wolfskill, and no further; and it was in said instrument agreed that at a point in the Santa Anita a reservoir should be constructed to receive the water of the ditch, from which it should be distributed for the equal benefit of both parties, the expense of constructing the reservoir to be equally divided between the parties; and for said consideration, Wolfskill granted, bargained, and sold to Weill the right to construct not more than two ditches leading from the reservoir to and upon the Duarte, for the purpose of distributing to his own use and benefit one half of the water so collected or to be collected in said reservoir, also the right of way over the Santa Anita for the reasonable purpose of constructing and repairing said ditches and using and enjoying the said half of the water of the reservoir. And it was agreed that each did convey to the other such interests and rights that each was and should be equally interested in the use of the waters of the arroyo and the reservoir, and the ditch leading into the reservoir, and should have and enjoy all the reasonable facilities for the preservation of said rights and privileges. This instrument, also, was acknowledged and recorded.

It may be here mentioned that to the north of the ranchos, higher on the stream, was a tract of government land, and in constructing the ditch, Wolfskill had gone to a point on the government land about half a mile north of the north line of the ranchos, and had constructed a dam to turn the water of the stream into the ditch, and from that point the ditch led southerly on the west side of the stream, across the government land, to and upon the Santa Anita.

Subsequently, one Newmark became the owner of the Santa Anita, and while the owner, he and said Weill caused to be posted and recorded a notice claiming to appropriate under the

provisions of the Civil Code, all the waters which flow or which might flow in and out of the Saw Pit Canon, as well by reason of prior appropriation as by the cutting and excavating of ditches, erection of flumes, and building of reservoirs, and use of the same, as also by reason of the natural bed of the stream being upon the lands of said ranchos; they also claimed the said water as belonging to the ranchos, and declared that they claimed "all the water which flows or which may hereafter flow down the Saw Pit Canon and out of the same to the extent of one hundred and ninety-six inches under a four-inch pressure," that they intended to use the water for domestic, agricultural, irrigating, and manufacturing purposes, and intended to carry and conduct it to, over, and upon the Santa Anita and Duarte ranchos, by means of the flumes, ditches, and aqueducts already erected, cut, and dug for that purpose, and to divert it if necessary by means of similar ditches and flumes, and if they be not sufficient, then by pipes sufficient to carry that amount of water.

Subsequently the defendant, Baldwin, acquired the title to the Santa Anita Rancho, and to the piece of government land above spoken of, through which the stream flows before reaching the north line of the ranchos.

During the rainy season water flowed in the stream down, through, and between the ranchos, but in the dry season it was diminished in quantity, and at times did not reach the line of the ranchos. In order that a larger and continuous supply might be obtained, Baldwin constructed a dam at a point on the stream about a quarter of a mile above the old dam, and constructed a ditch and flume therefrom across the land above spoken of as government, leading to the reservoir on the Santa Anita, repairing and using portions of the old ditch, and constructing new ditch and flume in places. By means of the new dam, and the ditch and flume so constructed and repaired, a continuous supply of water was obtained, and was used by Baldwin on his rancho. Prior to 1882, Weill, having no occasion to use water, had not attempted to do so; but in March, 1882, he constructed a ditch from the reservoir to convey water therefrom, over the intervening portion of the Santa Anita, to and upon the Duarte; this ditch was filled up and obstructed by

the defendants, was twice re-opened by plaintiff, and each time filled up and obstructed by the defendants; and this action was brought to enjoin them from further preventing plaintiff from constructing a ditch from the reservoir or from taking his share of the water, and to have it adjudged that plaintiff is the owner of an undivided half of the waters, and of the ditch, aqueduct, and reservoir, and of the right of way for two ditches for the purpose of using the waters from the reservoir. The plaintiff had judgment in the court below.

It is not necessary, in this case, to consider any question as to rights of the parties as riparian owners; nor as to the rights of Baldwin to have or use water as owner of the tract of so called government land, nor is it necessary to determine the effect of the notice of appropriation, further than as a transaction between the then owners of the ranchos regarding their respective rights, duties, and obligations arising under the two instruments which had been previously executed. By these two instruments the owners of the ranchos had covenanted and agreed, as between themselves as such owners, that the waters of the Saw Pit Canon stream should be taken and conveyed to a reservoir on the Santa Anita, by ditches and flumes constructed at their joint expense, and that from the reservoir Weill might construct at least two ditches across the Santa Anita, and convey one half of the water to the Duarte. The covenants contained in these instruments are covenants running with the land; and Baldwin, the successor of one of the contracting parties, could not, by going to a point higher up on the stream, and taking water therefrom, and conveying it (even across land not owned by either of the contracting parties) to the Santa Anita Rancho, claim the whole of it for his own use. The *water*, so far as the right to its use appertained to either of the two ranchos, was the subject of the contracts, the means of conducting it being secondary; the parties contracted with reference to the use of the waters of the Saw Pit Canon stream.

The Statute of Limitations does not apply. There is no evidence of adverse use until March, 1882.

It may be that Baldwin is entitled to recover of plaintiff one half of the amount necessarily expended, but that matter is not for consideration here, as payment does not appear to have been

made by the parties a condition precedent.    Baldwin's action in filling up plaintiff's ditch was not based on non-payment.

We have not mentioned in detail all the points presented by appellants; but they are in effect disposed of by the conclusion at which we have arrived.

Judgment and order affirmed.

SHARPSTEIN, J., and THORNTON, J., concurred.