[Sac. No. 2162. Department One.—May 1, 1915.]

LOGAN CECIL, Respondent, v. HARRY J. GRAY, JOHN DOE, and RICHARD ROE, Defendants; LOUISA E. BOGGS, FRANK S. BOGGS, FRED H. BOGGS, and ALICE J. DUTTON, Interveners and Appellants.

DEEDS — AFTER-ACQUIRED TITLE — ESTOPPEL BY GRANT.—The grantee under a grant, bargain, and sale deed purporting to convey the fee acquires any title to the land therein described acquired by his grantor subsequent to the date of the deed even if the grantor had no title whatever to the land at the time the deed was executed.

ID.—DESCRIPTION—RECITAL OF QUANTITY.—Clear words of description are not modified by a recital of quantity in the deed.

APPEAL from a judgment of the Superior Court of Glenn County and from an order denying a new trial. Wm. M. Finch, Judge.

The facts are stated in the opinion of the court.

Frank Freeman, for Appellants.

Arthur C. Huston, for Respondent.

SLOSS, J.—The plaintiff, claiming to be the owner of a tract of land in Glenn County, brought this action to enjoin the defendants from entering the land and constructing an irrigating canal thereon. The defendant Gray was about to proceed under authority derived from Louisa E. Boggs, Frank S. Boggs, Fred H. Boggs, and Alice J. Dutton, who, asserting title to the parcel which was to be occupied by the proposed canal, intervened, and asked that their title to the land claimed by them be quieted. Pending the action, the right to construct the canal was acquired by condemnation, and the present litigation has resolved itself into a contest between the plaintiff and the interveners over the title to the land claimed by the latter. Judgment went in favor of the plaintiff, quieting his title, subject to a right of way for the canal. The interveners appeal from the judgment and from an order denying their motion for a new trial.

The appellants describe the land which they claim to own as lots 7, 8, 9, and 10 of section 30, in township 19 north, range 2 west, M. D. B. & M., the said four lots containing 73.28 acres. The plaintiff asserts ownership to the whole of section 30.

A government survey of township 19 was made, and the plat thereof approved on November 12, 1867. This plat was offered in evidence. It showed the easterly half of section 30, divided into two full quarter sections of 160 acres each, and the east half of the westerly quarter sections, each containing 80 acres. The west end of the section, bounded by the range line and by the two eighty-acre subdivisions just mentioned, was divided into four lots, numbered 1, 2, 3, and 4, and containing, respectively 46.40, 46.20, 46, and 45.80 acres. The area of the entire section was 664.40 acres. A plat of a second survey, made by one Shackleford, was ap-

proved April 2, 1879. This plat shows lots 7, 8, 9, and 10, running along the westerly line of lots 1, 2, 3, and 4, and containing in the aggregate 73.28 acres. The land lying east of these lots is shown just as it was in the delineation of section 30 on the earlier plat. By the inclusion of lots 7, 8, 9, and 10 in section 30, on the face of the Shackelford plat, that section is made to contain 737.68 acres.

Prior to the making of the second survey, the different subdivisions of section 30 (as delineated on the original survey), were patented to various persons. All of these parcels finally became vested in John Boggs, the last conveyance to him being dated August 10, 1875, on which date he was the owner of the record title to the whole of section 30. On August 16, 1879, John Boggs executed to John E. Crooks, Robert Balfour, and Robert Brodie Forman a grant, bargain, and sale deed conveying to them "all of section 30, township 19 N., R. 2 W., M. D. B. & M." This, it will be observed, was subsequent to the approval of the Shackelford survey and plat. The plaintiff has succeeded to the interest of the grantees under this deed.

On July 23, 1880, the United States issued its patent to one Morris, conveying to him lots 7, 8, 9, and 10 of section 30. Morris conveyed such lots to John Boggs in December, 1885, and upon the death of Boggs the said lots were distributed to the interveners as successors to Boggs's title.

The plaintiff advances two distinct grounds for supporting the finding that he is the owner of the land in controversy. Either would suffice to justify an affirmance of the judgment and order. Both, we think, are sustained by the law and the evidence.

In the first place, the plaintiff as well as the interveners claim under John Boggs. Under any view of the effect of the Shackelford survey, lots 7, 8, 9, and 10, as shown by that survey, were a part of section 30. Boggs made a grant, bargain, and sale deed of the whole of section 30 to plaintiff's predecessors in August, 1879. If he did not then own that part of the section included in lots 7, 8, 9, and 10, his title subsequently acquired inured to the benefit of his grantees. "Where a person purports by proper instrument to grant real property in fee simple, and subsequently acquires any title or claim of title thereto, the same passes by operation of law to the grantee, or his successors." (Civ. Code, sec. 1106;

*Green* v. *Green,* 103 Cal. 108, [37 Pac. 188] ; *Merrill* v. *Clark,* 103 Cal. 367, [37 Pac. 238].) It makes no difference that Boggs, at the date of his deed to Crooks and others, may not have owned the whole of section 30. He purported to grant the entire section, and the effect of his deed was to estop him, as against the grantees, from asserting an after-acquired title to any part of the property which he had thus assumed to convey to them. (*Clark* v. *Baker,* 14 Cal. 612, 629, [76 Am. Dec. 449].)

Some of the deeds in the chain of title from Crooks and his associates to the plaintiff contain statements of the number of acres, and these statements are relied on to limit the effect of the deeds. But the various instruments purported to convey "all of section 30," or "an undivided half of section 30," and these clear words of description are not to be cut down or modified by a recital of the quantity. (13 Cyc. 635.) It will be remembered that all of the deeds in question were made after the approval of the Shackleford survey, and at a time, consequently, when lots 7, 8, 9, and 10 were, as appellants contend, a part of section 30.

But, irrespective of the question just discussed, the respondent must be sustained in his contention that the appellants have failed to locate on the ground any land answering the description of lots 7, 8, 9, and 10, and outside of the boundaries of section 30, as that section was delineated on the original plat of 1867. The difference between the two plats is in the location of the range line forming the western boundary of the township and of section 30. The Shackelford plat locates this line further west than does the earlier plat, and lots 7, 8, 9, and 10 are placed in the strip bounded by the two lines. But there was ample evidence to justify the court in believing that no strip could be found within the township, and west of the range line as delineated upon the earlier plat. Testimony was given that the range line was in the center of the county road, and that the fence of respondent's inclosure was 27 feet east of the line. The fence had been in the same position since 1870. A surveyor who had surveyed section 30 shortly before the trial found that the entire section, as occupied by Cecil, measuring east from the center of the county road, had an area of 658 acres, less than the acreage of the section as shown by the original plat. The appellant's claim was that lots 7, 8, 9, and 10 were within the boundaries inclosed by

plaintiff's fence.    There was thus presented, at the least, a
conflict of evidence, under which the court might find that the
land inclosed and occupied by Cecil was only the original sec-
tion 30 delineated on the plat of 1867.    In other words, the
evidence justified the inference that, notwithstanding the ap-
proval of the Shackelford survey, there was no tract of land
corresponding to lots 7, 8, 9, and 10 as described in that sur-
vey.    (*Harrington* v. *Boehmer,* 134 Cal. 196, 199, [66 Pac.
214, 489].)

The judgment and the order denying a new trial are
affirmed.

Shaw, J., and Angellotti, C. J., concurred.