[Civ. No. 1946.   Third Appellate District.—November 7, 1919.]

AMANDA E. WOOD, as Administratrix, etc., Appellant, v.
JOHN T. LONG et al., Respondents.

[1] LOST INSTRUMENTS—LOSS OR DESTRUCTION OF DEED—RIGHT TO
SUE ADMINISTRATOR TO COMPEL EXECUTION OF NEW DEED.—An
action will lie against the administrator of the estate of a de-
ceased person to compel the execution and delivery of a deed
conveying the title to lands where the deed thereto executed by
the deceased, which was never recorded, has been either lost or
destroyed.

[2] QUIETING TITLE—WEAKNESS OF DEFENDANT'S TITLE—RIGHT OF PLAINTIFF TO RECOVER.—In an action to recover and quiet title to certain lands, the plaintiff must prevail by the strength of her own title and not by the weakness of that of the defendant.

[3] ID.—FIDUCIARY RELATIONS—BREACH—EVIDENCE.—In this action to recover and quiet title to certain lands deeded by plaintiff's intestate to defendant, admitting that a relation of trust and confidence existed between said intestate and defendant, there was sufficient evidence to justify the court in finding that no advantage whatever was taken of said intestate, that the transaction was the result of his own volition, and that it was altogether fair and equitable.

APPEAL from a judgment of the Superior Court of Lassen County. J. O. Moncur, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

Louis B. Boardman for Appellant.

Pardee & Pardee for Respondent.

BURNETT, J.—Allen Wood died testate August 1, 1890, devising and bequeathing his property as follows:

"Thirdly: I give and bequeath to my beloved son, Allen J. Wood, of Santa Ana, Orange County, California, the sum of five hundred (500.00) dollars:

"Fourthly: I give, bequeath and devise to my beloved wife, Mary Wood, all the rest and residue of my estate, both real and personal of any kind and kinds whatsoever, of which I may die possessed, to have and to hold the same during the term of her natural life, then at the death of my said wife all of the said real and personal property which I may now lawfully bequeath and devise shall go to my beloved daughter, Mary E. Long, the now wife of William B. Long, of the said town of Susanville. She, my said daughter, then to have and to hold the same during the term of her natural life and at her death all of the said real estate, and all of the said personal property remaining shall go to the heirs of her my said daughter's body, share and share alike."

This will was admitted to probate in the superior court of Lassen County on April 5, 1891, upon the petition of Mary Wood, the surviving widow, and on April 11, 1891,

letters of administration with the will annexed were issued
to her as administratrix.   On September 27, 1892, an inven-
tory and appraisement of the estate of the deceased was filed,
showing that at the time of his death he was the owner of
437 acres of land valued, with the improvements thereon,
at six thousand dollars, and 160 acres appraised at four
hundred dollars, situated in said Lassen County. The lands
were not specifically described in said inventory, but it is
not disputed that the 437 acres were intended to include all
the farming land upon which were located the buildings,
and the residue of 160 acres was intended to cover the
timber lands.  On the twenty-seventh day of November,
1893, the superior court of the county of Lassen made and
entered its decree in the matter of said estate, setting aside
to Mary Wood, widow of said deceased, certain lands of said
estate, together with a small additional tract, as a probate
homestead.   It is not disputed that by this decree the title
of and to said lands of said estate vested in Mary Wood.
Subsequent to this decree, Mary Wood and her daughter
and son-in-law, Mary E. Long and W. B. Long, joined in
making a mortgage to Anthony Otto on a portion of the
land included in this decree and other lands.

This mortgage was thereafter foreclosed and the property
was purchased at the sale by said Otto, the commissioner's
deed having been made October 6, 1899.

The said Mary Wood died on the twenty-fifth day of July,
1896, and thereafter, on the fifteenth day of February, 1900,
said John T. Long was duly appointed by the superior court
of said county as administrator of the estate of Allen Wood,
in the place of said Mary Wood.

March 24, 1900, Otto commenced an action against John
T. Long as administrator of the estate of Allen Wood, Mary
E. Long, W. B. Long, and the heirs of said Mary E. Long
and W. B. Long, to quiet his title to the land so purchased
at the foreclosure sale.   Judgment was thereafter entered
in said action quieting Otto's title to certain parcels and
portions covered by said mortgage, and adjudging him to
be the owner in fee thereof; in said judgment it was also
determined that said Otto was the owner in fee of an un-
divided one-half of SE. ¼ of NE. ¼, section 30, and
SW. ¼ of SE. ¼ of section 19, Tp. 30 N., R. 12 E., M.

D. M. This judgment was affirmed by the supreme court July 16, 1904 (*Otto* v. *Long*, 144 Cal. 144, [77 Pac. 885]).

The estate of Allen Wood thereby lost all interest in and to the property mortgaged to Otto except an undivided one-half interest in the above-described two forties which were not included in the probate homestead. The interest of said estate in said two forties was subsequently sold at an administrator's sale, as appears by the transcript. This sale divested the estate of Allen Wood of all title to real estate, except the 160 acres of timber land, which was thereafter distributed by said court to Scott-Graff Lumber Company, the successors in interest to all the residuary devisees of said deceased. By the foregoing proceedings title to all the real estate belonging to said Allen Wood in his lifetime passed into the hands of third parties except the title to forty acres in section 19 and eighty acres in section 30, which vested in Mary Wood by reason of the probate homestead, and is still a part of her estate, and of which the estate of plaintiff's intestate would be the owner of the undivided one-half, unless the contention of respondent is sound that the title thereto passed to John T. Long, by deed August 18, 1910, from Allen J. Wood, execution of which is admitted by the pleadings. As to said lands sold to said Otto the record shows that subsequent to the entry of final judgment in the said case of *Otto* v. *Long*, the defendant, John T. Long, purchased from Otto said property. A part of the land included in said probate homestead was NE. ¼ of SW. ¼ of said section 19, the same being a portion of the land included in patent from the United States to James W. Bagwell. All of the lands included in the Bagwell patent were deeded by him to W. B. Long, father of said John T. Long, by deed dated February 20, 1898, and respondent claims title to this parcel by reason of a judgment rendered in the case of *John T. Long* v. *W. W. Long*, as administrator of the estate of said W. B. Long.

Amanda E. Wood, the appellant, is the surviving widow and the administratrix of the estate of Allen J. Wood, deceased, the son of said Allen Wood, and she brought this action against the defendant, John T. Long individually, and as administrator with the will annexed of the estate of Allen Wood, deceased, to recover and quiet title to these various tracts of land and especially the undivided one-half interest in the said 120 acres, comprising a part of the

probate homestead belonging to the estate of Mary Wood, deceased, and to which she claims Allen J. Wood was entitled to succeed as her son and heir at law.

As we have seen, the entire interest of appellant's intestate in the estate of his father was limited to the specific legacy of five hundred dollars, and, of course, appellant can have no greater interest in that estate, but the principal ground of controversy grows out of the disposition that has been made of a portion of the said probate homestead. However, the conduct of respondent in the administration of the estate of his grandfather, the said Allen Wood, is severely criticised by appellant, and specific instances are pointed out as constituting evidence of his neglect and want of good faith in discharging his trust as administrator. There was, indeed, long delay in settling the estate; in fact, it seems never to have been fully administered, but it is to be remembered that respondent was not appointed administrator until ten years after the death of said Allen Wood, and we may add that we find in the record no evidence that the defendant, Long, intentionally delayed the final settlement or that by his conduct the interest of appellant's intestate was prejudiced in the least. In this connection it may be stated that all the heirs and devisees, including said intestate, seem to have been satisfied with his management, as no complaint was apparently made, nor were any steps taken by any of them to expedite the settlement of the estate. Appellant, with much spirit, calls attention to the familiar principles of good faith and equity that should control the conduct of a trustee in relation to his trust, but we think that the discussion is largely foreign to the facts of this case. Indeed, if it should be thought that respondent was somewhat lacking in diligence as administrator of said estate it must be remembered that this action is to quiet title to certain real property, and the manner in which he discharged said trust can only be important in this inquiry as it affects the ownership of said realty. With these considerations in view we may notice the contention of appellant as to all the lands embraced by the pleadings; and to simplify the consideration we may adopt the division into parcels, made by respondent as follows: Parcel 1—the timbered lands, consisting of 160 acres in section 3 in said township 30; parcel 2—the Otto lands, being all of the lands to

which Otto acquired title under foreclosure proceedings, consisting of 240 acres in section 30 and an undivided one-half of forty acres in said section 30 and of forty acres in section 19; parcel 3—the Bagwell lands, consisting of 160 acres in section 19; parcel 4—said probate homestead lands, record title to which still is vested in the estate of Mary Wood, deceased, consisting of forty acres in section 19 and eighty acres in section 30.

1. Plaintiff really claims no interest in the timbered lands. They comprise 160 acres, which were sold and conveyed by the heirs of Mary E. Long, as residuary legatees under the will of Allen Wood, deceased, to the Scott-Graff Lumber Company. There can be no doubt that under said will the grantors in said deed were vested with the fee to said land subject, of course, to the incidents of the probate of said estate. It is equally clear that said heirs had the right to convey their interest to said grantee. The only concern that plaintiff's intestate could have in the matter grew out of his claim to the five hundred dollar legacy. But it could make no difference to him whether he received that legacy from the proceeds of the sale of said tract or from some other source. Complaint is made, however, because that tract was not sold by the administrator to pay said legacy and the expenses of administration. But for this respondent cannot be blamed, because he presented a petition to the court for said sale, but it was denied upon the ground that some of the residuary legatees had conveyed their interest in the land to said company, and that other real estate belonging to the estate should be first sold, it being an undivided one-half of said forty acres in section 30 and of said forty acres in section 19. This undivided one-half was afterward sold for said purpose upon an order made by the court in conformity with the prayer of the petition of respondent, of November 11, 1912. It may be repeated that we see nothing reprehensible in the conduct of the administrator as to this transaction; and as to the title to the land it was vested in said company by a decree of partial distribution by the court of the date of March 13, 1913. This decree was made in conformity with a petition therefor by the administrator, and after said company had given an undertaking as required by section 1661 of the Code of Civil Procedure. It is quite plain that there is no showing herein

sufficient to affect in the slightest degree the validity of that decree, even if it could be questioned in a proceeding against the administrator without making the grantee of said conveyance a party to the suit. We may add that if by reason of said sale to the Scott-Graff Company or the conduct of the administrator in relation thereto plaintiff had suffered any loss as to said legacy of five hundred dollars, she would have to seek redress against the administrator personally or by action on his bond; or, it may be, that she could have availed herself of the provisions of said undertaking given by the company as aforesaid. At any rate, no show: ig has been made herein to justify any disturbance of the title of said company to said timber tract.

2. As to the so-called Otto lands, the validity of the mortgage thereon executed by Mary Wood, W. Long, and Mary E. Long is not questioned. They had a mortgageable interest in the land and, granting that the debt secured thereby was really a debt of the estate of said Allen Wood, deceased, that circumstance did not, of course, impair the efficiency of the security. The mortgage was not paid and it was regularly foreclosed and the property was sold to said Otto. He had the right to purchase it, and there is no claim that there was anything irregular in the sale. The time for redemption expired and the purchaser received a deed therefor. Thereafter, as we have seen, he brought a suit against all the parties in interest and obtained a decree quieting his title to said tract. Thus was the absolute title vested in Otto. He thereafter had the right to sell the land to whomsoever he pleased. To this point there is no dispute, but appellant seems to base a claim to some interest in this land upon the fact that John T. Long was the purchaser from Otto. But, assuredly, Long was not precluded from purchasing property to which the estate had no title and in which it had no interest. His trust extended only to the property of the estate of which he was the administrator. If we adhere to the position of appellant, we must hold that an administrator of an estate can make no purchases of real estate from any source on his own account while he continues as such administrator. Of course, the proposition is absurd, and in that respect we may not have fully understood the contention of appellant. We may add that, if Long had purchased the said property or any portion

thereof with moneys of the estate a different question would, manifestly, arise, but the evidence shows that the entire purchase was made with his own funds and there is no claim or evidence of any fraud in connection with the transaction. Even if the lands had been bought with the money of the estate of Allen Wood, deceased, and an equitable title had thereby been created in favor of said estate, this would inure to the benefit of the residuary legatees, since under the will, as we have seen, plaintiff's intestate was only entitled to the legacy of five hundred dollars, and this, as we shall see, was subsequently paid him according to his agreement with Long. We can see no room for any candid difference of opinion as to the Otto tract.

3. The Bagwell tract consisted of 160 acres, patented to James W. Bagwell by the United States, December 19, 1885. It seems, however, that forty acres of this were improperly included in the said homestead set apart to Mary Wood, and upon this circumstance appellant bases a claim to some interest therein. As a matter of fact neither the estate of Allen Wood nor of Mary Wood ever had any interest in the Bagwell tract. On February 20, 1893, Bagwell conveyed these lands to W. B. Long, father of John T. Long, and the latter claims them by purchase from his father. [1] The evidence shows that he did so purchase these lands; however, the deed was never recorded, but was either lost or destroyed. After the death of said W. B. Long, John T. Long brought an action against the administrator of his father's estate to compel the execution and delivery of a deed conveying to him the title to said lands. Issue was regularly joined, and, after trial, judgment was entered on January 27, 1911, in favor of the plaintiff therein as prayed for. It is the claim of appellant that such action would not lie against the administrator of an estate and that the judgment therein was and is without force and effect. As to this we think appellant is in error. *Cummings* v. *Coe*, 10 Cal. 530, involved an action to compel the defendant to execute a new and second deed after destruction of the original by fire and the opinion was written by Mr. Justice Field, who said: "The proof of the execution of the deed and of its accidental destruction is full and satisfactory, and the jurisdiction of a court of equity to decree a re-execution of the deed is unquestionable."

In *Kent et al.* v. *Church of St. Michael,* 136 N. Y. 10, [32 Am. St. Rep. 693, 18 L. R. A. 331, 32 N. E. 704], the foregoing case is cited with approval, and it was held by the New York court that where the contract has been performed and the deed given, which the purchaser by some accident or misfortune has lost, so that he has no record to the land which was conveyed to him, a court of equity will compel the vendor, or after his death, those representing his title, to execute another deed, so as to clothe the grantee with the record title. The court declared that the right to bring such action did not depend upon any provision of the code, but had its sanction in the general jurisdiction of a court of equity. The principle, however, is too well settled to require further consideration. There can be no doubt that the action could have been brought against W. B. Long in his life and after his death a similar suit could be brought against his administration. In fact, there is specific authority for the action in section 1582 of the Code of Civil Procedure.

[2] Moreover, if said proceeding had been abortive and the judgment rendered therein ineffectual for any purpose, it would be of no avail to appellant, since she must prevail by the strength of her own title and not by the weakness of that of defendant. (*Di Nola* v. *Allison,* 143 Cal. 106, [101 Am. St. Rep. 84, 65 L. R. A. 419, 76 Pac. 976]; *Sears* v. *Willard,* 165 Cal. 12, [130 Pac. 869].) She made no such showing and did not connect herself in any manner with the paramount source of title to said lands or any portion thereof.

4. The 120 acres contained in this parcel were included in the probate homestead and were not covered by the Otto mortgage. It constituted the whole of the estate of Mary Wood at the time of her death, which occurred on July 25, 1896. On the 29th of January, 1897, letters of administration of her estate were issued to her daughter, Mary E. Long. Appraisers were appointed and notice to creditors published, but no further proceedings in her estate have ever been had. Plaintiff's intestate, Allen J. Wood and Mary E. Long, were the sole heirs of said Mary Wood and each was entitled to one-half of the said 120 acres, subject to administration and the payment of the debts of the estate.

44 Cal. App.—13

There can be no doubt that said Allen J. Wood immediately upon the death of said Mary Wood was vested with the right to sell and convey his interest in said estate, subject, of course, to administration. He exercised this right and on August 18, 1910, he executed and acknowledged a deed to John T. Long by which it appears that for the consideration of five hundred dollars, "receipt whereof is hereby acknowleged," the said Allen J. Wood "doth by these presents grant, bargain, sell and convey unto said party of the second part and to his heirs and assigns, all of his right, title and interest as one of the devisees or legatees of Allen Wood, deceased, and as heir at law of Mary Wood, deceased, in and to the estate of either of said deceased persons in the County of Lassen, State of California, the said interest in real, personal or mixed property."

This deed is attacked on the ground of fraud, but we find no evidence whatever in the record to justify such claim. The testimony shows that the deed was the voluntary act of said Allen J. Wood, and there is nothing to indicate any misrepresentation, concealment, coercion, undue influence, in fact, any feature of unconscionable conduct on the part of John T. Long or anyone else interested in the matter. The evidence shows that at one time the said Allen J. Wood offered to dispose of his interest in his father's estate to defendant for the sum of three hundred dollars, but the offer was never accepted or acted upon by the parties. There was no money in the hands of the administrator with which to pay the legacy, and it appears that said Wood was anxious to obtain the money and wrote to defendant that for five hundred dollars he would make an assignment of all his interest in both estates. The immediate occasion of the assignment was a letter written by Pardee and Pardee, attorneys for the administrator, to said Wood, dated August 15, 1910, as follows: "Mr. Long has handed me a recent letter of yours, to him, from which it would seem that you are very desirous of having the estate settled up as rapidly as possible, and Mr. Long has authorized us to say to you that he will, at this time, pay to you $500 if you will make an assignment of all your interest in the estate of either your father or your mother. He says that some time since you wrote him, if he would pay

you $500 that you would make such an assignment.'' We have carefully read all of the testimony, and it is inconsistent with any accusation or implication of bad faith. [3] But the particular claim of appellant is that the grantor and the grantee of said deed maintained the relation of trustee and beneficiary by reason of the fact that the grantee was the administrator of the estate of Allen Wood, deceased, and that the burden of proof was upon him to show the adequacy of the consideration for the deed, and that he failed to do so.

It is to be remembered, however, that this tract of land belonged to the estate of Mary Wood and that said John T. Long was not her administrator. The estate of Allen Wood had been divested of all interest in this land long before respondent was appointed administrator of that estate. As far as the purchase of the property of the estate of Mary Wood is concerned, he was under no greater constraint, moral or legal, than a stranger. He could have accepted a gift of Allen J. Wood's interest and the latter had the right to make such donation if he desired. But, the evidence shows that the transfer was for a valuable consideration. Just what was the market value of said interest does not clearly appear, but it is fairly inferable from the record that it was a very small sum. In this connection it may be said that it is somewhat singular, in view of the present contention of appellant, that she made no inquiry of any of the witnesses as to the value of said land.

Moreover, if we admit that a relation of trust and confidence existed, there was sufficient evidence to justify the court in finding that no advantage whatever was taken of said Allen J. Wood, that the transaction was the result of his own volition, and that it was altogether fair and equitable.

Appellant has furnished an ardent and comprehensive discussion of certain legal propositions, but it seems to us that she has made a wrong application of them to the facts as disclosed by the record.

The judgment is affirmed.

Ellison, P. J., *pro tem.*, and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 5, 1920.

All the Justices concurred, except Kerrigan, J., *pro tem.,* who did not participate.