[L. A. No. 8037.   In Bank.—November 3, 1925.]

ANTONIO ROCHA, a Minor, etc., Appellant, v. ANTONIO
ROCHA et al., Respondents.

[1] FRAUD—ACTION TO SET ASIDE DEED—EQUITY—JURY TRIAL.—An
    action to set aside and cancel certain written instruments affecting
    the title to real property, on the grounds of the mental incom-
    petence of the grantor and of deceit, misrepresentation, and undue
    influence practiced by the grantee, is an action of purely equitable
    cognizance, and not an action under section 738 of the Code of
    Civil Procedure; and, where neither the complaint nor the answer
    in such action raises any issues at law, plaintiff's demand for a
    jury trial is properly denied.

[2] HOMESTEADS—DEATH OF HUSBAND—REMEDY OF WIDOW TO CLEAR
    RECORD TITLE—FAILURE OF GRANTEE TO ASSERT TITLE—ESTOPPEL.
    —Where, after the death of the husband and the vesting of the
    community homestead in the surviving widow, the title of record
    remains in the deceased husband, a proper course to clear the
    title is to have the estate of the deceased husband of record
    administered upon and during the course of the administration
    to have the homestead set apart to the surviving widow under
    section 1465 et seq. of the Code of Civil Procedure; and neither
    the failure of the grantee of said surviving widow (to whom the
    property had been conveyed prior to the institution of the probate
    proceeding, in which said grantee is administrator, and for whose
    benefit such proceeding is instituted) to assert his title in that
    proceeding, nor his act in stating in his petition for letters of
    administration and in the inventory and appraisement that the
    estate of the deceased consists of said property, will estop him
    from subsequently asserting his title to the property based upon
    such prior deed, the execution of which was a matter of family
    knowledge, and under which he had continuously asserted title.

[3] EVIDENCE—DECLARATION OF GRANTOR IN DISPARAGEMENT OF TITLE
    —ABSENCE OF GRANTEE.—With certain exceptions, the acts and
    declarations of a grantor made after he has parted with title to
    property and in disparagement of it are inadmissible when made
    in the absence of the grantee.

[4] ID. — IMPEACHMENT OF DEED — SUBSEQUENT DECLARATIONS.—The
    force of an executed grant deed cannot be impeached or impaired

1.   See 4 Cal. Jur. 758; 15 Cal. Jur. 331; 16 R. C. L. 209.
3.   See 9 Cal. Jur. 214, 389.
4.   See 17 Cal. Jur. 760; 19 R. C. L. 257.
5.   See 9 Cal. Jur. 120.

by subsequent declarations by the grantor that it was in fact a mortgage.

[5] ID.—ACTION TO SET ASIDE DEED—MENTAL CAPACITY OF GRANTOR—PROPER INVESTIGATION.—In an action in equity to set aside a certain deed, where one of the issues is lack of mental capacity to execute the deed, questions as to the mental and physical condition of the grantor at the time of the execution of the conveyance, if part of the *res gestae*, are proper as tending to throw light on the condition of mind of the grantor; and where it is not contended that the grantor was totally lacking in mental capacity to execute the deed, but it is insisted that because of her advanced years and physical debility she was the more likely to yield to the influence of her son (the grantee) and be subject to the alleged fraudulent conduct on his part, her mental and physical condition at the time of the execution of the deed is a matter of proper investigation and disclosure.

[6] ID.—FINDINGS—WEIGHT OF TESTIMONY—APPEAL.—The appellate court can only set aside findings of a trial judge where it appears there is no substantial evidence to support them; and the credit to be given a witness is solely a question for the trial court, except where in the light of undisputed facts the testimony is so inherently improbable or incapable of belief as to constitute no evidence at all.

[7] FRAUD—CONFIDENTIAL RELATION OF SON AND MOTHER—INDEPENDENT ADVICE.—The claim that a confidential relationship existed between the grantee and the grantor (son and mother, respectively) at the time of the execution of a deed in question and that, therefore, it will be presumed that the grantee took advantage of his mother, cannot be successfully asserted where it appears that the mother had independent advice and acted not only of her own volition but with full comprehension of the results of her acts.

(1) 9 C. J., p. 1257, n. 42.   (2) 21 C. J., p. 1230, n. 72.   (3) 22 C. J., p. 357, n. 98.   (4) 22 C. J., p. 358, n. 6.   (5) 22 C. J., p. 445, n. 25.   (6) 4 C. J., p. 883, n. 33.   (7) 18 C. J., p. 427, n. 54.

APPEAL from a judgment of the Superior Court of Los Angeles County.  Charles S. Burnell, Judge.  Affirmed.

The facts are stated in the opinion of the court.

J. J. Wilson, A. E. Hamilton and Gerald F. H. Delmas for Appellant.

6.  See 2 Cal. Jur. 918; 2 R. C. L. 206.
7.  See 20 Cal. Jur. 449.

J. Wiseman Macdonald for Respondents.

SHENK, J.—For many years Antonio Jose Rocha and Ventura L. de Rocha, husband and wife, were the owners as community property of ten acres of land in the Rancho Rincon de Los Bueyes in Los Angeles County. On December 1, 1898, the husband executed a declaration of homestead on said property and caused the same to be duly recorded. He died on January 23, 1908. Surviving him were the widow, four daughters, and a son, Antonio Rocha, one of the defendants in this action. Another son, Bernardino Rocha, father of the plaintiff herein, predeceased his father. Trinidad K. Talamantes, the guardian *ad litem* herein, is the mother of the plaintiff and the surviving wife of Bernardino. The defendant Concepcion R. de Higuera, is one of the daughters of Antonio Jose and Ventura L. de Rocha and the defendant Bernardo de Higuera is her husband. After the death of Antonio Jose Rocha his surviving widow occupied the homestead premises in company with her son Antonio. The other children had married and established their homes elsewhere. Antonio remained single, devoted his time to the cultivation of said property and to the care of his mother. On March 3, 1910, the mother conveyed said property by grant deed to her son Antonio. The consideration therein recited was love and affection, support, and maintenance given by the grantee to the grantor for many years past and other good and valuable considerations. Antonio had expended money in the care and development of said property and had advanced about $800 on account of funeral expenses incident to the death of members of his mother's family, which expenses he was in nowise legally bound to pay. At the time of the execution of said deed the reasonable market value of the property was about $200 an acre. Within a year after its execution Antonio expended approximately $1,600 in the further development of the property. He also paid the taxes levied on said property from the time he received said deed.

About the middle of June, 1916, the defendant Rocha desired to obtain a loan on said property but discovered that the title was not clear, for the reason that no proceedings had been taken to show of record that the title to

said homestead had vested in his mother as the surviving
spouse. He consulted an attorney, who advised him of
the proper procedure to clear the title. To that end and
under the guidance and direction of his attorney, under
date of July 5, 1916, he filed a petition for letters of ad-
ministration in the matter of the estate of his father. In
this petition he set forth the next of kin and heirs at law
of the decedent, including the plaintiff in this action.
Letters of administration were duly granted and on August
30, 1916, defendant Rocha filed an inventory and appraise-
ment wherein he alleged that the estate of said decedent
consisted wholly of the said real property and was of the
value of $1,750. Proceedings were thereafter duly taken by
the defendant Rocha to have the recorded homestead set
apart and the same was on September 18, 1916, set apart
by the court to the surviving widow. On the next day she
executed a second grant deed to the defendant Rocha con-
veying to him the same property. Said defendant then
obtained a bank loan. The promissory note and mortgage
securing the same were thereafter purchased from the bank
by the defendants de Higuera at a time when the bank
was insisting upon payment of the indebtedness.

Ventura L. de Rocha died on November 27, 1917. On
June 2, 1922, plaintiff, then nineteen years of age, brought
this action as an heir at law of the deceased. The com-
plaint is in two counts. In the first count it is alleged that
at the time of the death of her husband Ventura L. de
Rocha was of advanced years and could neither read, write,
nor understand the English language; that she began to
decline in bodily health and to wane in mental vigor and
had become afflicted with a cancerous growth on her left
ankle; that by the year 1910 she was infirm in body and
feeble in mind and was confined to her bed a greater por-
tion of the time; that she was unable to care for herself
or transact business of any nature; that during that period
she reposed great trust and confidence in her son Antonio
and entrusted to him the entire care and management of
her property; that "the defendant Antonio Rocha, well
knowing the feeble condition of the said Ventura L. de
Rocha, both as to body and mind, and of her dependence
upon him both for bodily care and for the management of
her business affairs, and with intent to willfully deceive,

mislead and defraud her, did present a document to the said Ventura L. de Rocha for her signature, representing to her that the said document was security for money loaned and advanced to her by him, the said Antonio Rocha, in the past and to secure future advances to be made by him for her support and for the maintenance of her said property; that the document was in effect a mortgage and that upon her death the said . . . property would pass to her children charged only with the amounts so advanced; that relying upon the statements made and the representations as aforesaid and without reading or having the said instrument read to her, and being at the said time sick and bedridden and feeble in mind and body and placing the highest confidence in the love, affection and integrity of her son, the said defendant herein, and believing the said document to be security for money advanced and to be advanced, the said Ventura L. de Rocha did on or about the 3d day of March, 1910, execute the said document by placing her mark thereupon''; that the statements made by the said defendant to his mother respecting the character and purport of said document were false, were known by the said defendant to be false, and were willfully made by him to her for the purpose of acquiring said property from her in fee and with intent thereby to deceive his mother and that she was deceived thereby. The plaintiff prayed that the said deed be set aside and canceled; that the property be declared to be the estate of Ventura L. de Rocha, deceased, and subject to administration as such; that all claims of any and all of the defendants adverse to the interests of said estate and the heirs at law thereof be declared to be invalid; that the said deed be produced in court for cancellation and for costs. The second count alleges similar fraud; also deceit, misrepresentation, and undue influence as to the deed executed by Ventura L. de Rocha on September 19, 1916, and as to said deed the same relief is sought. It is further alleged that the defendants dé Higuera acquired their mortgage interest in said premises with full knowledge of said alleged fraud, deceit, and undue influence and that such interest is subject to any and all equities thereby created. The defendants denied the alleged fraud, deceit, misrepresentation, and undue influence; denied that the said deeds were executed for security

only and prayed that their title be quieted as against the plaintiff. From a judgment in favor of the defendants the plaintiff appeals.

[1] Preliminarily the plaintiff demanded a trial by jury. The application was denied and this is the first point urged for reversal. The plaintiff seeks to bring himself within the rule laid down in *Donahue* v. *Meister,* 88 Cal. 121 [22 Am. St. Rep. 283, 25 Pac. 1096]. That was an action under section 738 of the Code of Civil Procedure. The complaint was in the usual form to quiet title to a certain quartz mining claim and contained the averment of possession on the part of the plaintiff. The answer alleged the defendant's right of possession to a portion of the claim and lawful possession thereof until unlawful dispossession and ouster by plaintiff. The defendant prayed that he be restored to his possession of the portion of the claim in controversy. The defendant demanded a jury trial "on the issues raised by defendant's said averments' of prior possession and ouster." Trial by jury was denied by the trial court on the ground that the case was a proceeding in equity. It was held on appeal that the issues raised by the answer were triable at law at the time the present constitution was adopted; that either party had the right to have such issues tried by a jury and that the enactment of section 738 did not and could not deprive a litigant of such right. In speaking of the effect of that section, the court said: "The code confers equitable rights so far as it grants the power to maintain the action at all, and the decree is in form equitable, but if it has to deal with ordinary common law rights clearly cognizable in courts of law it is to that extent an action at law." The court was at pains to limit the scope of the decision to the particular facts presented, saying: "It is decided here only that where the answer shows that the defendant was rightfully in possession, and was ousted by plaintiff and wrongfully kept out of possession, upon the trial of those issues the defendant is entitled to a jury trial." (*Donahue* v. *Meister, supra,* 129 [25 Pac. 1098].) The plaintiff seems to take the position that in all actions under said section 738 a trial by jury is available to either party as a matter of right and that the present action is of such a character. The position is untenable, first, because section 738 merely

enlarged the class of cases in which equitable relief could be sought in actions to quiet title (*Castro* v. *Barry,* 79 Cal. 443, 446 [21 Pac. 946]; *Crocker* v. *Carpenter,* 98 Cal. 418 [33 Pac. 271]). That section did not purport to grant the right of trial by jury in actions wherein a jury was not theretofore available nor did it purport to deny a jury trial where a right to a jury formerly existed. The amendment of 1895 (Stats. 1895, p. 72) made this plain when it provided that "nothing herein contained shall be construed to deprive a party of the right to a jury trial in any case where, by the law, such right now exists"; and, secondly, the plaintiff's position cannot be maintained for the reason that the present action is not one brought under said section 738. It is an action to set aside and cancel written instruments on the ground of fraud, an action of purely equitable cognizance. (*Mesenburg* v. *Dunn,* 125 Cal. 222 [57 Pac. 887]; 2 Cal. Jur. 758.) No issues at law were raised either by the complaint or by the answer. The fact that the defendants in their answer prayed that their title be quieted as against any claim asserted by the plaintiff does not affect the nature of the action as one in equity. In fact, it calls for equitable relief. Nor is the character of the action changed by reason of the fact that the Higueras, husband and wife, are parties defendant. It is alleged that they claim an interest as mortgagees in the property described in said deeds and that their interest was acquired with full knowledge of the alleged fraud of the defendant Rocha and it is prayed that whatever claims they have adverse to the alleged rights of the plaintiff be declared to be of no force or effect. The relief sought against them is likewise equitable in its nature.

The case of *de Arellanes* v. *Arellanes,* 151 Cal. 443 [90 Pac. 1059], is peculiarly in point in support of the defendants' position both as to the facts and as to the law. There the plaintiff and appellant was a woman of advanced years who could neither read, write, nor understand the English language. She had four married daughters and two grown sons, one being the defendant in said action. The defendant was the only child who remained with his parents on the ranch property involved in said action. The plaintiff reposed implicit trust and confidence in the defendant and had even given him a general power of attorney. The

plaintiff executed a grant deed in his favor for the expressed consideration of one dollar and covering about two thousand acres of land. Before the execution of the deed the defendant had managed the plaintiff's properties for many years. Plaintiff brought an action to set aside the deed on the ground of alleged fraudulent representations on the part of defendant in procuring her signature to said deed and for an accounting. The defendant denied the allegations of fraud. This issue was submitted to a jury which found in favor of the plaintiff. Disregarding the findings of the jury the trial court made its own findings in favor of the defendant and entered judgment accordingly. On appeal by the plaintiff it was contended that the trial court was bound by the findings of the jury, but this court said: "In actions of this character a party is not entitled to a jury as a matter of right, and if a jury be called in it simply acts in an advisory capacity, the court being compelled to make findings of its own, and in so doing it is free to adopt or reject the findings of the jury as it deems proper. In determining whether the findings of the trial court are sustained by the evidence it is immaterial that such findings are contrary to the findings of the jury." In that action as in this the crucial point was whether the plaintiff was entitled to a jury as a matter of right. If in an action to set aside a deed on the ground of fraud and for an accounting issues were presented purely of equitable cognizance and the court was not bound by the findings of the jury it would necessarily follow that the court could properly deny to the plaintiff a trial by jury in the first instance. The present action was to set aside deeds on the ground of fraud and the surrender of the same for cancellation. The pleadings present issues solely for the determination of the chancellor. (See 15 Cal. Jur. 333, and cases cited.) The jury trial was therefore properly denied.

[2] When the defendant Rocha, on July 5, 1916, filed his petition for letters of administration in the matter of the estate of his father for the purpose of clearing the title he alleged therein that the decedent left estate in Los Angeles County consisting solely of the real property involved herein and in the inventory and appraisement filed by him he described said property as constituting the estate of the

deceased. It is contended by the plaintiff that the exclusive remedy of defendant Rocha was to assert his title in the probate proceeding and failing to do so he is now estopped from claiming that the said property was not a part of said estate. It is also claimed that as it has been held that a court record imports absolute verity the defendant Rocha will not now be permitted to assert that the allegations contained in his petition for letters of administration and in his inventory and appraisement did not truly state the facts. The purpose of the probate proceeding was to clear the title so that a mortgage loan might be obtained on the property. This could only be done by showing of record that the homestead was vested in the surviving spouse. It was undoubtedly true that upon the death of her husband in 1908, the title of the homestead vested as a matter of law immediately in the surviving widow under section 1265 of the Civil Code and section 1474 of the Code of Civil Procedure, but as a practical matter the title of record still remained in the deceased husband and it was necessary to employ the means provided by law to cause the record to conform to the fact, otherwise the title could not be certified as clear for the protection or satisfaction of the proposed mortgagee. As the law stood at the time the said probate proceedings were initiated a proceeding under section 1723 of the Code of Civil Procedure to have the homestead set aside to the surviving spouse may have been rightly considered somewhat uncertain in its effect on all parties interested. (See *Hansen* v. *Union Savings Bank,* 148 Cal. 157 [82 Pac. 768]; *King* v. *Pauley,* 159 Cal. 549 [Ann. Cas. 1912C, 1244, 115 Pac. 210].) The safe course was, therefore, selected, namely, to have the estate of the deceased husband of record administered upon and during the course of the administration to have said homestead set apart to the surviving spouse under section 1465 et seq. of the Code of Civil Procedure. The proceedings in probate were in nowise adverse to the interest of the surviving widow. They were really in her favor and the effect thereof was to feed the title of her grantee (Civ. Code, sec. 1106; *Cecil* v. *Gray,* 170 Cal. 137 [148 Pac. 935]; 9 Cal. Jur. 275). The execution of the second grant deed in 1916 added nothing to the title which had theretofore passed but appears to have been executed as a matter of precaution. Clearly the

elements of estoppel were not present in the conduct. of the defendant Rocha. He asserted his right to the property from the time he received the deed in 1910. He paid the taxes and cultivated or leased the property from that time on. The making of that deed was a matter of family knowledge and comment from a time shortly after its execution. There was no concealment on the part of said defendant and the heirs of the widow were not prejudiced by the allegations referred to. He was, therefore, not estopped thereby (*Dean* v. *Parker*, 88 Cal. 283 [26 Pac. 91]; *Bollinger* v. *Wright*, 145 Cal. 292, 297 [76 Pac. 1108]).

The plaintiff takes exception to numerous rulings on the admission and exclusion of evidence during the course of the trial. These objections fall within rather well-defined groups. The first group has to do with evidence wherein the plaintiff sought to prove certain declarations of the grantor made after she executed the deed of 1910, and in disparagement of it and not made in the presence of defendant Rocha. [3] The ruling of the court in excluding such evidence was in conformity with the well-settled rule of law that the acts and declarations of a grantor made after he has parted with title to property and in disparagement of it are inadmissible when made in the absence of the grantee. There are, of course, exceptions to that rule. The plaintiff undertakes to bring himself within the exceptions approved in *Williams* v. *Kidd*, 170 Cal. 631 [Ann. Cas. 1916E, 703, 151 Pac. 1], where the issue was whether delivery of the deed had actually taken place with the intention to pass title and it was held that the declarations of Williams, the grantor, made during the time the defendant Kidd was the depositary of the deed were admissible as bearing on the issue of delivery. [4] But here no question of delivery was involved. The real question was whether the document signed and delivered on March 3, 1910, was a deed or a mortgage. It was in form a grant deed and plaintiff sought by offering the declarations of the grantor made after its execution to prove that it was in fact a mortgage. The force of an executed conveyance cannot be impeached or impaired by such declarations (*Bias* v. *Reed*, 169 Cal. 33 [145 Pac. 516]; *Marple* v. *Jackson*, 184 Cal. 411 [193 Pac. 940]).

The plaintiff cites *Bell* v. *Pleasant,* 145 Cal. 410 [104 Am. St. Rep. 61, 78 Pac. 957], and relies on certain language found on page 418, but that case is not authority for plaintiff's position. The plaintiff in that action was contending that a deed to the defendant, Mary E. Pleasant, absolute in form, was in effect a mortgage. The defendant Solomon was a grantee of the defendant Pleasant and it was held that the trial court did not err in admitting in evidence the declarations of the grantor Pleasant made to the plaintiff at the time of and subsequent to the execution of the deed. A cursory reading of that decision might indicate that its general language would be authority for plaintiff's position but an examination of the record discloses that the declarations there received in evidence were not in disparagement but in support of Solomon's title. They were, therefore, in the nature of declarations against interest and clearly admissible. In the present case the declarations of the grantor sought to be proved would have tended to defeat or impair the title of her grantee and were properly excluded (*Steinberger* v. *Young,* 175 Cal. 81 [165 Pac. 432]).

The next group of exceptions refers to rulings of the trial court striking out answers or portions of answers of certain witnesses as not responsive to the questions propounded and sustaining objections to certain questions which called for the opinion or conclusion of witnesses. These objections are numerous and separate consideration of them would unduly prolong this discussion. Each has been considered in the light of the record. The answers stricken out were clearly irresponsive and were properly stricken. The questions to which objections were sustained on the ground that they called for the opinion or conclusion of witnesses had to do generally with matters affecting the mental status of Ventura L. de Rocha before and after the deed of March 3, 1910, was executed. **[5]** On an issue of lack of mental capacity to execute the deed questions as to her mental and physical condition at the time of such execution, if part of the *res gestae* would be proper as tending to throw light on the condition of her mind (*Estate of Snowball,* 157 Cal. 301 [107 Pac. 598]; *Estate of Ricks,* 160 Cal. 450, 467 [117 Pac. 539]; *Estate of Anderson,* 185 Cal. 700 [198 Pac. 407]). It is not contended herein that

the deceased was totally lacking in mental capacity to execute said deed, but it is insisted that because of her advanced years and physical debility she was the more likely to yield to the influence of her son and be subject to the alleged fraudulent conduct on his part. It may be assumed that on that theory her mental and physical condition at the time of the execution of the deed was a matter of proper investigation and disclosure (*Estate of Ricks, supra*), but an inspection of the record shows that the court did not foreclose the plaintiff from legitimate examination on that subject.

The trial court made findings on all the issues presented by the pleadings. The plaintiff specifies some twelve or more instances wherein it is claimed that the evidence was insufficient to support them. [6] The plaintiff concedes the rule that this court can only set aside findings of a trial judge where it appears there is no substantial evidence to support them and that the credit to be given a witness is solely a question for the trial court except where in the light of undisputed facts the testimony is so inherently improbable or incapable of belief as to constitute no evidence at all. With this rule in mind the record has been examined with the view of determining whether the findings complained of are supported. Without discussing them in detail it may be said that all of the findings mentioned are supported either by undisputed evidence or by substantial evidence where a conflict appears. True as is often the case there is substantial evidence in the record upon which contrary findings would find support but we are not at liberty to substitute our judgment for that of the trial court on such conflicting evidence.

[7] It is insisted that the evidence shows without conflict that a confidential relationship existed between defendant Rocha and his mother at the time of the execution of said deeds and that therefore it will be presumed that the son took advantage of his mother and is now seeking to profit thereby. It is conceded by the plaintiff that this presumption does not obtain where it appears that a person alleged to have been overreached had independent advice and acted not only of his own volition but with full comprehension of the results of his acts. Prior to the execution of the deed of March 3, 1910, the grantor consulted

with an old-time family friend who was the godfather of the defendant Rocha. His advice was sought by the deceased as to the best course to pursue to reimburse the defendant Rocha for moneys expended and for assistance and support past and future. This friend of the family was the agent of neither party and tendered his advice freely and it was after consultation with him on numerous occasions and pursuant to suggestions made by him that the deed was executed. He was a witness at the trial. He testified that the purpose of the deed was for security only, but in this he was contradicted by other witnesses. The record sufficiently shows that the deceased grantor had independent advice and acted with full comprehension of the effect of her action.

No other points require consideration. The judgment is affirmed.

Richards, J., Waste, J., Seawell, J., Lennon, J., Lawlor, J., and Myers, C. J., concurred.