[No. B043887. Second Dist., Div. Four. Aug. 31, 1990.]

Estate of HELEN CLAIRE PHELPS, Deceased.
JANICE M. BAMBRICK, as Executrix, etc., Petitioner and
Respondent, v.
SUZANNE PHELPS ODEKERKEN et al., Objectors and Appellants.

**COUNSEL**

Weinberg, Zipser, Arbiter & Heller, Steven A. Morris, Richman, Lawrence, Mann & Greene and Laurence D. Strick for Objectors and Appellants.

Westover & Matthews and Michael B. Hicken for Petitioner and Respondent.

**OPINION**

**WOODS (A.M.), P. J.**—This is an appeal from a judgment in a probate action in which respondent Janet Bambrick (Bambrick or respondent), as

executor for the estate of Helen Claire Phelps (decedent), filed a petition under Probate Code section 9860 for the recovery of certain real property which had been transferred from decedent to her daughter, appellant Suzanne Phelps Odekerken (daughter). A jury returned a special verdict in which it found that the grant deed effecting transfer had been obtained through undue influence. Judgment was entered accordingly. The daughter and her husband, Bernardus J. Odekerken (appellants), appeal.

Viewed in the light most favorable to the judgment, the relevant facts are as follows: Decedent was the mother of two children, her daughter and a son, Wilford Alexander Phelps (son). In 1981, decedent, who was a widow, made a will in which she left the bulk of her estate in trust to her son. She made smaller bequests to other family members, including one of $500 to her daughter. Decedent told Bambrick, who prepared the will, that she wanted to leave her son an amount of money equal to that which she had loaned to her daughter who had used it for an unsuccessful business venture. These loans which ultimately totaled $231,000 were never repaid despite letters seeking repayment written to the daughter by Bambrick at decedent's request. The daughter later claimed that the loans had been forgiven.

In June 1986, son, Alex, died. Shortly thereafter, Bambrick met with decedent and asked whether she wished to change her will, specifically with reference to the bequest to her daughter. Bambrick explained that Alex's sons, Alex, Jr., and Jason, now stood to inherit their father's share of the estate. Decedent declined to make any changes in her will. She told Bambrick that her daughter had received more than enough money from her and that "this would then be money that would be left to Alex's sons."

Following the death of her son, decedent went into a physical and mental decline. She repeatedly expressed to various relatives and to Bambrick that she was in poor health, depressed and no longer wished to live. During this period, her daughter became decedent's primary caretaker. She had access to and use of decedent's credit cards, checkbook and automobile. To Bambrick decedent stated that her daughter "had taken control of her life, that she had taken control of her credit cards, her mail, her car, her checking account." The daughter testified, however, that decedent had authorized her use of the credit cards, checking account and automobile. In any event, the daughter wrote checks to herself and members of her family on her mother's account totaling $20,000 between October and December 1986. She also used decedent's credit cards for personal purchases both before and after decedent's death. She testified that she had repaid her mother for some of these purchases.

On November 26, 1986, decedent executed a grant deed by which she transferred title to her home to her daughter. The deed had been prepared by the escrow department of Coast Savings Insurance at the request of Bernaclus Odekerken (Ben), daughter's husband, who was employed as a regional vice-president of Coast Savings. The deed consisted of a preprinted form, which Ben Odekerken had purchased at a stationery store, with typed-in information inserted at Coast. The typed-in portion described the property and contained the notation, "This is a bonafide gift and the grantor received nothing in return, R & T 11911." Decedent was driven to a notary by her daughter, where she signed the deed and wrote in her daughter's name as grantee.

The daughter, and other witnesses called on her behalf, later claimed that the transfer had been decedent's idea. The daughter also testified that her mother had pressured her to prepare a deed to effect the transfer, but that she resisted out of fear that her business creditors might somehow evict decedent from her home. Eventually, decedent asked Ben Odekerken to have the deed prepared. Daughter also claimed that it was at her mother's insistence that the deed was notarized prior to the daughter leaving on a brief vacation with her family over Thanksgiving 1986. As further evidence that the transfer was voluntary, daughter pointed to a $5 check written by decedent payable to the Los Angeles County recorder's office for the purpose of recording the deed.

Nonetheless, other friends and family members testified that decedent had continued to express her desire to sell her house even after the transfer had occurred. The day after the transfer she told her niece she wanted to sell her house, and repeated this in another conversation a few days later. Around the same time, she told her grandson, Alex Phelps, Jr., that once she sold her house she would help him with the down payment for a house of his own. She said the same thing to the widow of her son, Alex, Sr. She also told Alex, Jr.'s wife, Monica Phelps, that she wanted to sell the house. Moreover, neither decedent nor her daughter ever informed any other family member of the transfer of title. Nor did decedent inform her attorney, Bambrick, even though the transfer was contrary to the provisions of her will.

A month after the transfer, on December 27, 1986, decedent died.

On July 11, 1988, Bambrick filed the instant petition seeking recovery of various assets for the estate, but primarily seeking to recover decedent's residence. The petition alleged, inter alia, causes of action for revocation of

grant deed, quiet title and constructive trust on theories of lack of mental capacity and undue influence.[1]

On May 11, 1989, the matter came to trial. Preliminarily, the trial court denied daughter's motion to exclude evidence of the unpaid loans she had received from decedent and an elderly friend of decedent's. The court concluded that the evidence was relevant to decedent's state of mind on the undue influence issue. A second motion by daughter concerning the right to trial by jury was waived.

When the court reconvened, however, it raised the jury trial issue on its own motion. The court pointed out that Bambrick was proceeding only on the causes of action for revocation of grant deed and quiet title, and requested further argument as to whether they were equitable in nature and thus not appropriate for jury trial. After hearing argument, the court expressed its belief that it was a close question, and that a court trial would probably be more appropriate, but because "it is not so clear to me that that is the answer," it allowed a jury trial.

On May 22, 1989, the jury returned a verdict that decedent had the requisite mental capacity to execute the deed but that the conveyance of the property was the result of daughter's undue influence. Judgment was entered, daughter's motion for new trial and judgment notwithstanding the verdict was denied, and this appeal followed.

After review, we reverse.

I

The dispositive issue in this case is whether the court erred when it permitted a jury trial of this action. As the trial court observed, it is a close question. "It is well established that there is no right to jury trial in probate proceedings unless provided for by statute. [Citations.]" (*Heiser* v. *Superior Court* (1979) 88 Cal.App.3d 276, 279 [151 Cal.Rptr. 745].)[2] An exception to this rule permits a jury trial when a probate statute provides for the formulation of issues of fact which, under section 1230, give rise to a right to jury trial on those issues if otherwise appropriate. (7 Witkin, Cal. Procedure (3d

---

[1] Bambrick voluntarily dismissed all causes of action except those pertaining to recovery of decedent's residence prior to trial.

[2] This rule is now codified in Probate Code section 7200, which provides: "Except as otherwise expressly provided in this code, there is no right to a jury trial in proceedings under this code concerning the administration of the decedent's estate." This section was not in effect at the time of the trial of the instant action. Also, section 1230 was repealed after the date of trial. We discuss the law as it existed then.

All references are to the Probate Code.

ed. 1985) Trial, § 96, pp. 94-95; *Budde* v. *Superior Court* (1950) 97 Cal.App.2d 615, 616-618 [218 P.2d 103]; *Estate of Beach* (1975) 15 Cal.3d 623 [125 Cal.Rptr. 570, 542 P.2d 994].)

*Budde* involved a petition under section 1461 for the appointment of a guardian for an incompetent. Louisa Budde filed a petition under section 1461 for appointment of a guardian for Henry F. Budde. A second petition was filed by Albert Budde who sought to be appointed guardian. The petitions were set for a hearing. Henry F. Budde and his son, Fred J. Budde, filed oppositions to both petitions and demanded a jury trial. The trial court denied the request and Henry and Fred Budde petitioned for a writ of prohibition.

The appellate court noted that although section 1461 permitted a friend or relative of the alleged incompetent to appear and oppose the petition, it was silent on the issue of whether a jury trial was permitted. The court then considered section 1230 which provided in part: "All issues of fact joined in probate proceedings must be tried in conformity with the requirements of the rules of practice in civil actions . . . . When a party is entitled to a trial by jury and a jury is demanded, and the issues are not sufficiently made up by the written pleadings on file, the court, on due notice, must settle and frame the issues to be tried." (*Budde* v. *Superior Court, supra*, 97 Cal.App.2d at p. 616.) Section 1230 failed to specify the instances in which a jury trial was permitted in probate.

Petitioners argued that the issues raised by appearance and opposition to a petition filed under section 1461 were issues of fact within section 1230 and triable by a jury, if one was demanded. (*Budde* v. *Superior Court, supra*, 97 Cal.App.2d at p. 616.) The appellate court agreed: " 'It has been held that a party to a probate proceeding is entitled to a trial by jury when there is statutory authority for the formulation of issues of fact upon the question to be determined.' " (*Id.* at p. 620, italics omitted., quoting *Estate of Perkins* (1943) 21 Cal.2d 561, 566-567 [134 P.2d 231].) ■ ■■■ The court concluded that the "appear and oppose" language in section 1461 was a sufficient statutory authorization for the formulation of issues of fact susceptible to trial by jury under section 1230.[3] (*Budde* v. *Superior Court, supra*, 97 Cal.App.2d at p. 620; see *Estate of Muller* (1969) 2 Cal.App.3d 259, 266-267, fn. 8 [82 Cal.Rptr. 531].)

In *Estate of Beach, supra*, 15 Cal.3d 623, however, the Supreme Court added a refinement to this exception which demonstrated an intention that the exception should be narrowly construed.

---

[3] Section 1230 was subsequently reenacted into section 1280. Section 1280 was in effect at the time of trial of the instant action. A statute reenacted without substantial change gives rise to a presumption of legislative acquiescence to judicial construction of the statute. (*In re Marriage of Skelley* (1976) 18 Cal.3d 365, 369 [134 Cal.Rptr. 197, 556 P.2d 297].)

In *Beach*, the Supreme Court held there was no right to a jury trial in an action claiming mismanagement of estate assets in the form of objections to the executor's first accounting. (§ 927.) The court in *Beach* rejected application of the line of cases granting jury trials when the code permits the formulation of issues of fact. (*Estate of Beach, supra*, 15 Cal.3d at p. 642.) The *Beach* court distinguished between those cases presenting complex issues of accounting or involving the probate court's supervisorial powers over the executor's management of the estate and cases involving factual issues along the lines of those presented in a will contest; e.g., questions of mental capacity or undue influence. The court held that a jury trial was not available in the former class of cases but was available in the latter. (*Id.* at p. 643.)

*Beach* was followed by *Heiser* v. *Superior Court, supra*, 88 Cal.App.3d 276, which involved section 851.5, the predecessor statute to section 9860, under which the instant petition was brought. (See Cal. Law Revision Com. com., West's Ann. Prob. Code, § 9860 (1987 pocket supp.) p. 478, Deering's Ann. Prob. Code, § 9860 (1990 supp.) p. 306 ["Paragraphs (3) and (4) of subdivision (a) restate a portion of the first sentence of former Probate Code section 851.5."].)

In *Heiser*, the executor of the estate of one Matthew Lewis filed a petition under section 851.1 in which he sought to recover one-half of the assets in the estate of Lewis's wife, Tillie, on the theory that all her assets were community property. (*Heiser* v. *Superior Court, supra*, 88 Cal.App.3d at p. 278.) Matthew's executors demanded a jury trial. The trial court granted the demand. The executors of Tillie's estate then sought a writ of prohibition to prevent it.

Although noting that section 851.5 did not provide for jury trials, the court observed: "Section 1230 [cf. § 1280] has been held to provide for the right of jury trial in ' ". . . those cases in which the code has expressly authorized issues of fact to be framed." ' [Citations.]" (*Heiser* v. *Superior Court, supra*, 88 Cal.App.3d at p. 279, quoting *Budde* v. *Superior Court, supra*, 97 Cal.App.2d at p. 618.)

After reviewing the Supreme Court's decision in *Estate of Beach, supra*, 15 Cal.3d 623, the *Heiser* court concluded that "in addition to a statutory provision for the joining or framing of factual issues, such issues must be appropriate for jury determination." (*Heiser* v. *Superior Court, supra*, 88 Cal.App.3d at p. 279.) The *Heiser* court went on to say that: "[J]ury trials are not available in probate proceedings when such would risk undermining the probate court's supervisorial responsibilities or when the issue resembles an accounting wherein it is impractical for a jury to wade through a mass of

figures. Jury trials are appropriate, however, when the issues involve such things as standard of conduct, mental capacity [citations], or credibility of witnesses." (*Heiser* v. *Superior Court, supra*, 88 Cal.App.3d at p. 280; accord *Estate of Baumann* (1988) 201 Cal.App.3d 927, 934, fn. 9 [247 Cal.Rptr. 532].)

Turning to the petition before it which it characterized as "conclusory," the court was unable to determine whether, in light of its discussion of the applicable law, the petition raised factual issues appropriate to a jury trial. The court noted that the proceeding "appear[ed] to have similarities to accounting actions, not appropriate for jury trial, and to dissolution proceedings for which juries are not traditionally permitted. This suggests that a trial by jury should not be had. Nonetheless, the decision should be made by the trial court after a proper presentation to it." (*Heiser* v. *Superior Court, supra*, 88 Cal.App.3d at p. 281.)

Accordingly, while reversing the order granting the jury trial, the court did so without prejudice to granting a new order should further delineation of the issues warrant it. (*Heiser* v. *Superior Court, supra*, 88 Cal.App.3d at p. 282.)

Respondent relies heavily on *Heiser* to support her view that a jury trial is authorized in the instant action on the theory that section 9860, like its predecessor section 851.5, the subject of *Heiser*, authorizes formulation of issues of fact (§ 9860, subd. (b) ["The petition shall set forth the facts upon which the claim is based."]), and therefore under former section 1280 a jury trial is permissible.

Under this excessively broad reading of *Heiser*, the general rule of no right to jury trial in probate, except when expressly authorized by statute, would be swallowed up by the exception. We do not read *Heiser* so broadly. In our view *Heiser* did not hold that section 851.5 (present § 9860) expressly authorized such jury trials. Rather, it relied on former section 1280 which required that issues of fact joined in probate proceedings "be tried in conformity with the requirement of the rules of practice in civil actions." (former § 1280.) Moreover, *Heiser* noted that the case before it bore a resemblance to those actions "for which juries are not traditionally permitted." (*Heiser* v. *Superior Court, supra*, 88 Cal.App.3d at p. 281.) Finally, *Heiser* follows *Beach* which was a decision curbing broad application of the exception. Thus, we interpret *Heiser* as preserving the right to a jury trial under section 9860 only to the extent that the right to jury trial would exist if the action were being tried outside of probate. Similarly, we conclude that section 1280 does not confer a greater right to jury trial than would exist in a nonprobate matter. It does no more than recognize that the

right to jury, if it otherwise exists, is not lost because the proceeding occurs in probate. In the case before us, therefore, we must analyze the right to a jury trial by examining the underlying nature of the action.

Here, the action is to quiet title. Generally, there is no right to a jury trial in a quiet title action which is fundamentally equitable in nature. A quiet title action becomes a legal action when it takes on the character of an ejectment proceeding to recover possession of the property. (3 Witkin, Cal. Procedure (3d ed. 1985) Actions, § 92, p. 119.) Respondent argues that because the issue of possession is implicated here, that a right to jury trial exists. (See, e.g., *Medeiros* v. *Medeiros* (1960) 177 Cal.App.2d 69, 72-73 [1 Cal.Rptr. 696].)

It is true that former Code of Civil Procedure section 738 which provided a statutory basis for quiet title actions also provided "that nothing herein contained shall be construed to deprive a party of the right to a jury trial in any case where, by law, such right is now given." (Code Civ. Proc., § 738 [repealed]; see Code Civ. Proc., §§ 760.020, 764.020, subd. (b).) This language, however, "did not purport to grant the right of trial by jury in actions wherein a jury was not theretofore available nor did it purport to deny a jury trial where a right to a jury formerly existed." (*Rocha* v. *Rocha* (1925) 197 Cal. 396, 402 [240 P. 1010].) "Later [decisions] clarified the situation by pointing out that the action is normally equitable, but becomes a legal action when it takes on the character of an ejectment proceeding, i.e., when the issue is the right to recover possession lost by recent ouster." (3 Witkin, Cal. Procedure (3d ed. 1985) Actions, § 91, p. 118, italics omitted.)

Respondent's allegations failed to raise the issue of possession so as to convert the action from an equitable one to a legal one giving rise to a right to jury. Indeed, respondent concedes that her petition did not specifically seek possession. Instead, she relies on *Medeiros* v. *Medeiros, supra*, 177 Cal.App.2d 69, for the proposition that the failure to make such a specific allegation is not fatal to a right to jury trial so long as it can be determined from the pleadings that the right to possession was at issue. (*Id.* at p. 73.)

In *Medeiros*, although there was no prayer for possession, "the complaint alleged in part an estate in the plaintiff and possession in the defendant and a wrongful withholding. The action had the essential characteristics of the old legal action of ejectment." (177 Cal.App.3d at p. 73.)

There are no comparable allegations in the petition filed by respondent. There is no basis upon which to imply the issue of possession.

Finding only equitable issues presented, we conclude that the court erred when it permitted a trial by jury and we therefore reverse the judgment. The trial judge herein heard all of the evidence presented. In this unusual situation, if the same trial judge presides at the further proceedings in this case, he may, if he deems it appropriate, render his decision without further evidence or with such further evidence as he deems necessary.

Appellants to recover costs.

Goertzen, J., and Epstein, J., concurred.

A petition for a rehearing was denied September 21, 1990, and respondent's petition for review by the Supreme Court was denied November 14, 1990.